**In re Paul M. LEWIS, Debtor.**

**Bankruptcy No. 80–21931.**

United States Bankruptcy Court,
W.D. New York.

Sept. 21, 1983.

David MacKnight, Rochester, N.Y., for Seneca Paper.

George Reiber, Rochester, N.Y., Trustee for debtor.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The issue to be determined here is whether a post-confirmation creditor, who extends unsecured credit to a Chapter 13 debtor who is engaged in business under a confirmed plan (11 U.S.C. § 1304) and who has no knowledge of the bankruptcy, is entitled to payment of the debt as an administrative priority under 11 U.S.C. § 503(b) above the claims of the general unsecured pre-petition creditors.

Paul M. Lewis, doing business as Lewis/Hare Printing, filed a Chapter 13 petition on December 23, 1980. On April 10, 1981, an amended Chapter 13 plan was filed which was confirmed by Order entered April 29, 1981. This plan provided for 48 monthly payments; $300 for the first four months, and $655 a month thereafter. The plan also provided for payment of the secured claims and that the unsecured claims would receive no less than they would in a liquidation under Chapter 7.

The Confirmation Order stayed actions against co-debtors under 11 U.S.C. § 1301 and provided: "... all entities are and continue to be subject to the provisions of 11 U.S.C. 362 insofar as they are stayed or enjoined from commencing or continuing any proceeding or matter against Debtor, as the same is defined by Section 362"; "All of the Debtor's wages and property of whatever nature and kind and wherever located, shall remain under the exclusive jurisdiction of this Court; and title to all of the debtor's non-exempt property of whatever kind and nature, and wherever located is hereby vested in the Debtor during the pendency of these Chapter 13 proceedings pursuant to the provisions of 11 U.S.C. § 1327."; and "Debtor is stayed and enjoined from incurring any new debts in excess of $250 except such debts as may be necessary for emergency, medical or hospital care without the prior approval of the trustee unless such prior approval was impracticable and, therefore, cannot be obtained."

Seneca Paper now claims that Lewis Printing purchased goods from it as follows: (1) On October 29, 1981, Invoice # 64184 in the sum of $113.71; (2) On November 24, 1981, Invoice # 66417 in the sum of $251.40; (3) On January 12, 1982, Invoice # 586 S.C. in the sum of $5.00. Seneca Paper claims $370.11. It is Seneca's contention that the debtor bought the goods in the ordinary course of the debtor's business and that at the time of purchase, Seneca did not know that the debtor had filed a Chapter 13 petition. Seneca believes that the goods were necessary for the carrying out of the debtor's business and benefitted the debtor's estate. Seneca claims that a Chapter 13 debtor engaged in business is permitted to operate his business under 11 U.S.C. § 1304(b) and may incur unsecured credit in the ordinary course of business under 11 U.S.C. § 364(a). Such credit is allowable as an administrative expense under 11 U.S.C. § 503(b)(1)(A) if it constitutes an actual, necessary cost of preserving the estate. If Seneca is correct in its analysis, the debtor may pay for these items under 11 U.S.C. § 1322(a)(2) which provides for full payment under the plan of all priority claims in deferred cash payments. See *In re Parker*, 15 B.R. 980, 982 (Bkrtcy.E.D. Tenn.1981), affd. 21 B.R. 692 (D.C.E.D. Tenn.1982).

The trustee argues that a hearing is necessary to determine whether the expenses were incurred in the ordinary course of business under 11 U.S.C. § 364(a) and whether they were actual necessary costs of preserving the estate under 11 U.S.C. § 503(b). The trustee also suggests the applicability of 11 U.S.C. § 1305(a)(2), (c) which refers to post-petition claims of consumer debts. The trustee believes his consent was necessary for the incurrence of this debt. The trustee asks the Court to impose guidelines so that post-petition

claims do not defeat failing Chapter 13 plans.

11 U.S.C. § 1305 is not applicable here. The legislative history to that section states, "Debts of the debtor that are not consumer debts should not be subjected to 11 U.S.C. § 1305(c) or 11 U.S.C. § 1328(d)." 124 Cong.Rec.H. 11, 106 (Sept. 28, 1978); S. 17, 423 (Oct. 6, 1978). The issue raised here is whether a business debt can be afforded administrative status after a Chapter 13 plan has been confirmed. This raises policy considerations of whether a business can be conducted under the confirmed plan and whether the automatic stay provisions and the discharge would make the extension of business credit practicable for a creditor and encourage a debt readjustment by a debtor doing business.

The question of how far the Bankruptcy Court should impose itself in post-confirmation activities of a business is no longer a question of jurisdiction but a question of policy. Under former law, the Bankruptcy Court's exclusive in rem jurisdiction over the estate ended on confirmation when the property revested in the debtor. The Court in *Bakers Share Corp. v. London Terrace,* 130 F.2d 157 (2d Cir.1942), stated the former law that after confirmation there was "no power to adjudge the rights and liabilities of the corporation arising from transactions with third persons; equally [the judge] has none to adjudge even the mutual rights and liabilities of the parties themselves so far as those depend, not upon the contents of the 'plan', but upon subsequent transactions ..." The Bankruptcy Courts' powers are no longer limited to in rem jurisdiction, and, therefore, the question of the control retained by the Court is a question of policy, and might differ according to the plan of adjustment of debts or reorganization.

Certain post-petition creditors are given priority under 11 U.S.C. § 503(b)(1)(A) to cover the actual, necessary costs of preserving the estate. This priority is given to encourage creditors to extend trade credit to a distressed business. See *Vogel v. Mohawk Electric Sales,* 126 F.2d 759 (2d Cir.

1942). The reorganizing debtor hopes that through successful rehabilitation the pre-petition creditors can recover a larger proportion than in an immediate liquidation. The risk of continuing business is taken and new debt is incurred in order to produce greater income. See *Reading Co. v. Francis Shunk Brown,* 391 U.S. 471, 478, 88 S.Ct. 1759, 1763, 20 L.Ed.2d 751 (1968). The decision whether to give a priority to new creditors over old creditors after confirmation of the plan must be based upon what other remedies are available to post-confirmation creditors that would encourage them to deal with the debtor. This also depends on how much control the Bankruptcy Court has retained. Treatment of post-confirmation creditors could differ in a business Chapter 13 plan or a Chapter 11 plan on this basis. The Court must look to the Order of Confirmation and the law to determine that treatment.

The plan in a business Chapter 13, as in most reorganization cases, is initiated by the debtor. The debtor can provide for the trustee to retain title to the property and exercise close control over it or the debtor can provide that title to the property revest in him with the trustee having little or no control over the business. In the latter case, the confirmation order should set up reporting procedures for the debtor so that the Court, the trustee, and its creditors can monitor the activities of the debtor.

■ In the instant case, the creditor did not rely on the existence of a reorganization plan. It did not know of the bankruptcy. There were three transactions with the debtor. None of them were authorized by the trustee. Only one of them exceeded the $250 limitation against incurring debt without the trustee's consent as provided in the confirmed plan. The stay provisions are inapplicable to Seneca in this case because the debt arose after the commencement of the case. 11 U.S.C. § 362(a) stays actions, generally with regard to pre-petition debts. An action against the debtor is not stayed under 11 U.S.C. § 362(a)(3) which prevents obtaining possession of property of the estate since the confirmation order provided

that all the debtor's property revested in the debtor, though, the Court retained jurisdiction thereof. But, retained jurisdiction is not to be interpreted broadly, but is required to be specifically set forth in the plan. (*In re Paradise Valley Country Club,* 26 B.R. 990 (D.Colo.1983). The retention of jurisdiction does not mean it is always advisable to exercise jurisdiction extensively after confirmation for anything other than orders which execute a plan. Thus, where a lawsuit for post-petition debts will not catastrophically affect the plan, as in the instant case, the Court need not exercise jurisdiction and the creditor may pursue his remedies in a State forum.

█ Seneca Paper has sought its remedy in this Court. It is proper to do so ab initio, so that the Court may make this threshold inquiry into the impact of its claims on the Chapter 13 plan and the creditors dealt with therein. But the proper method is by a motion seeking leave to sue the debtor in State Court, and this Court will treat Seneca Paper's motion as such a motion, and will grant it.

The scope of the relief herein granted extends even to enforcement of any judgment obtained by Seneca Paper, in light of the relatively small amount of the claims asserted by it. Should it and the debtor reach agreement on payments terms, they may execute and perform the agreement outside the Chapter 13 plan. The Court will leave to another day the question of how any unpaid portion of Seneca's claims might be treated were the debtor to convert his case to a Chapter 7.

In reaching this result in this case, the Court enunciates a policy of interfering in the post-confirmation affairs of Chapter 13 debtors and their creditors as little as it can, given whatever degree of Court involvement has been contemplated in the Plans confirmed by this Court and the order confirming it. Such a policy is consistent with the rights of pre- and post-confirmation creditors alike, as well as those of the debtor.