**In re John PETRUCCELLI, Debtor.**

**Bankruptcy No. 85–04790–B13.**

United States Bankruptcy Court,
S.D. California.

March 14, 1990.

Radmila A. Fulton, Law Offices of Radmila A. Fulton, San Diego, Cal., for debtor.

Karen Sommers, Sp. Asst. U.S. Atty., San Diego, Cal., for I.R.S.

Harry Heid, San Diego, Cal., Chapter 13 Trustee.

ORDER ON MOTION FOR SANCTIONS
UNDER 11 U.S.C. § 362(h)

PETER W. BOWIE, Bankruptcy
Judge.

On September 26, 1985 debtor John Petruccelli filed his petition for relief under Chapter 13. His principal debts were tax obligations, the bulk of which were owed to the IRS for income taxes from 1974–1984, and for certain withholding taxes for 1980–1985. Debtor is a practicing attorney. The precipitating events for his bankruptcy filing involved seizures by the State of California of debtor's business and trust accounts, foreclosure on his home, and the freezing of certain assets by the IRS.

Debtor proposed his plan on October 11, 1985 to pay $1,800 per month to the trustee and a resulting dividend to unsecured credi-

tors of 50%. The plan was confirmed by order filed January 10, 1986. Debtor thereafter substantially performed under the plan.

On April 27, 1989 debtor filed a pleading styled "Ex Parte Motion for Order to Show Cause Why the Internal Revenue Service Should be Held (sic) in Contempt and for Release of Post–Petition Levy and for Sanctions Pursuant to 11 U.S.C. Section 362(H)". Debtor has alleged that the IRS caused a levy to be made on debtor's business checking account on April 24, 1989, which debtor contends is an act in violation of 11 U.S.C. § 362.

This Court declined to consider the motion ex parte, but set it for hearing the next day. At that hearing the Court directed that the levy would stand until further order, but the bank was to disburse no funds in the interim. The Court set an evidentiary hearing for June 29, 1989, to take evidence on whether the funds in the account levied upon were "property of the estate."

At the evidentiary hearing several facts were established. The taxes sought by the IRS levy were post-petition obligations for 1986 and 1987. The funds levied upon were account funds earned post-petition by the debtor. Those account funds were also the source for debtor's payments to the Chapter 13 trustee. Indeed, the IRS agreed to release $1,800 from its levy so debtor could make his plan payment before the hearing. Following the hearing and supplemental briefing, this Court took the matter under submission. This Court has jurisdiction under 28 U.S.C. § 1334 and General Order 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (O).

■ Section 362(a) of Title 11, United States Code, provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities of—

.  .  .  .  .

.

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;  ....

As courts have regularly recognized, the automatic stay operates in three specific ways. It "bars certain actions against the (1) debtor, (2) property of the debtor and (3) property of the estate." *In re Johnson*, 51 B.R. 439, 442 (Bankr.E.D.Pa.1985), citing *In re Casgul of Nevada, Inc.*, 22 B.R. 65, 66 (9th Cir. BAP 1982). Actions against the *debtor* are barred if the actions could have been brought before the petition was filed "or if those efforts are attempts to collect on a prepetition debt." *In re Johnson*, 51 B.R. at 442. That portion of § 362 is not applicable to the instant proceedings because it is established that Petruccelli's debt is for taxes accruing post-petition.

The automatic stay operates similarly with respect to acts against the *property of the debtor*. The automatic stay applies only if the acts are to collect on prepetition debt. 11 U.S.C. § 362(a)(5); *In re Johnson, supra.*

■ The third area of operation of the automatic stay is the protection it affords to *property of the estate*. The protection here is much broader and prohibits acts against property of the estate regardless of "whether the debt arose before or after the filing of the petition." *In re Johnson*, 51 B.R. at 442. Since § 362 does not bar actions against the debtor or property of the debtor for post-petition claims, debtor here must establish that the funds in the bank account levied upon by the IRS were *property of the estate* before a violation of § 362 could possibly be found.

Of course, debtor does contend that the funds in the account are property of the estate. In support of his position, he cites 11 U.S.C. § 1306(a)(2). That section provides:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

.　　.　　.　　.　　.

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

There is no debate about the proposition that upon the filing of a petition under Chapter 13 an estate is created. Section 1306 provides the conceptual definition of the property which comprises that estate. Post-petition earnings are clearly and expressly included within that definition. *In re Adams*, 12 B.R. 540, 541 (Bankr.D.Utah 1981); *In re Johnson*, 36 B.R. 958, 959 (Bankr.D.Utah 1983); *In re Denn*, 37 B.R. 33, 35 (Bankr.D.Minn.1983); *In re Nash*, 765 F.2d 1410, 1413–1414 (9th Cir.1985).

Debtor, however, seeks more from § 1306(a)(2). He argues not only that post-petition earnings are property of the estate, but also that they retain that character until "the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a)(2).

The IRS responds to debtor's argument by citing 11 U.S.C. § 1327(b), which describes the effect of confirmation of a Chapter 13 plan:

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

The IRS argues that by operation of § 1327(b), property which was property of the estate prior to confirmation vests in the debtor upon confirmation and is thus no longer property of the estate. Since the monies in debtor's account are no longer property of the estate post-confirmation, the IRS argues that the automatic stay does not bar efforts of a post-petition creditor to collect from debtor's property.

The central issue for the Court is how the terms of 11 U.S.C. § 1306(a) can or should be reconciled with the provisions of 11 U.S.C. § 1327(b). This is an issue which has troubled a number of courts in recent years. *In re Littke*, 105 B.R. 905, 908 (Bankr.N.D.Ind.1989); *Laughlin v. U.S. I.R.S.*, 98 B.R. 494, 495 (D.Neb.1989); *In re Walker;* 84 B.R. 888 (Bankr.D.D.C.1988); *In re Aneiro*, 72 B.R. 424, 429 (Bankr.S.D. Cal.1987); *In re Clarke*, 71 B.R. 747, 749 (Bankr.E.D.Pa.1987); *In re Root*, 61 B.R. 984, 985 (Bankr.D.Colo.1986); *In re Mason*, 45 B.R. 498, 500 (Bankr.D.Ore.1984), *aff'd*, 51 B.R. 548, 550 (D.Ore 1985); *In re Denn*, 37 B.R. 33, 35 (Bankr.D.Minn.1983); *In re Johnson*, 36 B.R. 958, 959 (Bankr.D.Utah 1983); *In re Adams*, 12 B.R. 540, 541 (Bankr.D.Utah 1981). As reflected in the pleadings of the parties, those courts which have considered the issue have reached differing conclusions. *In re Littke*, 105 B.R. 905, 908 (Bankr.N.D.Ind.1989); *In re Clarke*, 71 B.R. 747, 750 (Bankr.E.D.Pa. 1987).

The problem was early recognized by the court in *In re Adams*, 12 B.R. 540 (Bankr. D.Utah 1981). In that case the court was concerned with ascertaining what property, if any, was available in a Chapter 13 case post-confirmation which a former spouse could pursue to satisfy a nondischargeable debt for past alimony and child support. The court does not mention whether the obligation arose pre-petition or later, or whether any such obligation was treated under the confirmed plan.

The *Adams* court recognized that the filing of the Chapter 13 petition caused the creation of an estate the composition of which is defined by 11 U.S.C. § 1306. The court stated:

The expansive definition of Section 1306 defines "property of the estate" as it exists upon the filing of a petition.... Even though post-petition wages and other property normally remain in the possession and control of the debtor prior to confirmation under Section 1306(b), that

property remains "property of the estate" under Section 1306(a)....

Circumstances change, however, upon the confirmation of a plan.... [U]nder Section 1327(b), unless the plan or order of confirmation provides otherwise, "the confirmation of a plan vests all of the property of the estate in the debtor." ...

Under these provisions, the expansive definition of "property of the estate" found in Section 1306 is pruned dramatically at confirmation. Any property which has not been designated in the plan or order of confirmation as necessary for the execution of the plan revests in the debtor, under Section 1327(b), to become "property of the debtor."

12 B.R. at 541–542.

The *Adams* court was candid in expressing its interest in balancing the effect of § 1327(b) with the presumed interests of the debtor. The court wrote that after considering both, "an asset line can be drawn, subsequent to confirmation, between 'property of the estate' and 'property of the debtor' which may fairly protect the rights of debtor and his dependents." 12 B.R. at 541. The court then concluded:

Thus, all wages over and above those paid to the trustee or creditors under a plan, and any property which the debtor does not propose to use in funding his plan returns to the debtor and becomes subject to the reach of his ex-spouse under Section 362(b)(2). Therefore, although the ex-spouse's collection action is initially held at bay by the breadth of the Section 1306 estate, once confirmation occurs, a more equitable balance is struck between the needs of the debtor to rehabilitate himself and those of his dependents seeking lawful support.

12 B.R. at 542. What is clear from the *Adams* opinion is that the reason revested property is "subject to the reach of" the ex-spouse is because it is no longer property of the estate. What is not clear, however, is how the *Adams* court determined, procedurally, that "wages paid to the trustee or creditors under a plan" were still property of the estate and not within the reach of the ex-spouse. Presumably, it is

fair to assume that the court wanted to protect the debtor's ability to perform under the plan. However, the court does not tell us what the plan or confirmation order provided to achieve that result.

The case of *In re Root*, 61 B.R. 984 (Bankr.D.Colo.1986) presents a particularly interesting scenario in which to consider the problem. In *Root*, the debtor filed under Chapter 13 and had his plan confirmed. The IRS was one of his creditors and filed a proof of claim. Thereafter, the IRS served a Notice of Levy on the debtor to require the debtor to pay to the IRS funds which the debtor owed to his attorney because the *attorney* owed the IRS for certain taxes. As it happened, the debtor had made his payments to the trustee from which the trustee had paid the attorney in full.

The *Root* court concluded that the IRS Notice of Levy was not a violation of the automatic stay. Apparently, the court arrived at that conclusion because:

There was no evidence that the IRS was specifically seeking to levy on that portion of the property and earnings which remained "property of the estate" post-confirmation. Had that evidence been forthcoming, the IRS would have been in violation of § 362.

If the IRS was seeking to levy only upon property of the Debtor which did not constitute "property of the estate", such action would not have been in violation of § 362.

61 B.R. at 985. The result seems curious since the debtor was paying his attorneys fees through his plan payment to the Chapter 13 trustee, with the trustee making the disbursement to the attorney. To the extent the funds comprising the plan payment remained property of the estate post-confirmation, it would seem a levy on those funds would violate the automatic stay. The *Root* court clearly was of the view that funds constituting plan payments were property of the estate. After noting the *Adams* decision, the court wrote:

Any property that has been designated in the plan or order of confirmation as necessary for the execution of the plan, *e.g.*

post-petition wages up to the amount of the plan payments each month, remain "property of the estate."

61 B.R. at 985. Perhaps it was the fortuity that the attorney had already been paid in full which permitted the result.

Like the *Adams* court, the *Root* court does not tell us how those funds preserve their character as property of the estate. Unlike *Adams,* however, the *Root* court insists some sort of "estate" continues to exist post-confirmation. The court wrote:

> If there is no existing estate upon confirmation, then what does the Chapter 13 Trustee administer? If there is no estate over which the Chapter 13 Trustee has control, then that Trustee is nothing more than an officious intermeddler. Even 11 U.S.C. § 704(9) ... provides that the Trustee shall "... make a final report and file a final account of the administration of the *estate* [emphasis added] with the court." There must be an "estate" upon and after confirmation, and that estate consists of the property and future earnings of the debtor dedicated to fulfillment of the Chapter 13 Plan.

61 B.R. at 985.

The decision of *In re Clarke,* 71 B.R. 747 (Bankr.E.D.Pa.1987) presents another interesting set of circumstances in which the apparent conflict between § 1306 and § 1327(b) arose. The debt arose post-confirmation. At the hearing on a motion brought by the creditor regarding the status of its lien on debtor's residence the court learned that the debtor had signed an agreement to sell his house, and the sale was to close the next day. The Court was concerned with whether the creditor's lien should be stricken. Part of the analysis required a determination of whether the lien was placed on property of the debtor or property of the estate.

The *Clarke* court stated that it was persuaded that the language of § 1306 "militated against the movant's contention that 'property of the estate' lost its status as such upon the confirmation of the Debtor's plan...." 71 B.R. at 749. After quoting the language of § 1306 the court wrote:

We must confess that we find neither § 1327(b) or § 1306 to be models of clarity, and we can think of policy reasons for either of two interpretations of what happens to "property of the estate" upon confirmation: (1) It continues being such until the case is closed, dismissed, or converted to another Chapter; or (2) It ceases being such at the time of confirmation and forever after, unless the debtor, in his Plan, per § 1327(c), provides otherwise.

The *Clarke* court recognized that § 1306(a)(1):

> ... suggests that the "property of the estate" at filing, and thereafter added to it post-filing, remains as such until closing, dismissal, or conversion of the case.

*Id.* Turning to § 1327(b), the court wrote:

> And, § 1327(b) states that, on confirmation, all of the "property of the estate" "vests" in the debtor. In one sense, it can be argued that this means that, at that point, the "property of the estate," vesting in the Debtor, is "property of the estate" no more. However, when it is considered at more length, it can be concluded that § 1327(b) raises additional conceptual questions, notably the following: (1) If "property of the estate" effectively disappears at confirmation, it is not [sic] improper to state that it "vests" anywhere? (2) If Congress meant to say that property of the estate ceases to exist as such at the time of confirmation, why did it not simply say so, instead of introducing the metaphysical concept that something that has disappeared "vests" in anyone?

*Id.* Of course, the creditor did not argue that property of the estate "disappeared" upon confirmation, but rather that it revested in the debtor as property of the debtor. Moreover, the *Clarke* court fails to discuss that the concept of "vesting" is not peculiar to § 1327(b), but is also contemplated by the Congress in cases under Chapter 11 [see 11 U.S.C. § 1141(b) ], and in dismissal of most cases brought under Title 11 [see 11 U.S.C. § 349(b)(3) ].

The *Clarke* court acknowledges the conflict in cases which have considered the

issue, including an earlier decision from its own district. Without further explaining why, the court concluded:

> Despite the number of authorities in the opposite direction, we are inclined to accept the reasoning of the *Root* case.

71 B.R. at 750. The court then makes a curious statement.

> We believe that a party standing in the shoes of the Movant should have a relatively slight burden to overcome to obtain relief from the automatic stay prospectively. Otherwise, ... a post-petition creditor ... would be unfairly frozen in place until the debtor, in leisurely fashion completes his Plan payments and is discharged. The equities in favor of the Movant here are few, in our view, but one of them is that it is unfair for the Debtor, having been "re-vested" with his "property of the estate," to be able to sell his most valuable asset, his residential realty, but the Movant, at the same time, to be unable to touch it. In sum, the prospect of the Debtor's selling his property out from under the Movant is, in our view, sufficient "cause" to justify prospective relief from the automatic stay, per 11 U.S.C. § 362(d)(1).

*Id.* Notwithstanding the court's inclination to follow *Root*, the *Clarke* court does not explain how the debtor can unilaterally dispose of his house post-confirmation, without any court or trustee involvement or approval, yet a post-petition creditor cannot act against the same property without relief from the automatic stay. In order for the stay of § 362 to apply to the debtor's residence post-confirmation, the residence must be property of the estate or the creditor must be trying to collect from property of the debtor for a pre-petition debt. Section 362 does not apply, otherwise.

Within a week of the *Clarke* decision, Judge Malugen of this court rendered her opinion in *In re Aneiro*, 72 B.R. 424 (Bankr.S.D.Cal.1987). In that case, she was faced with a motion for relief from the automatic stay by the debtor's landlord. The debtor had an original lease executed in 1984 which the court found had been assumed through confirmation of the debt-or's Chapter 13 plan. Some months after confirmation the debtor entered into a revised lease with the agent for the earlier landlord. The issue before the court was whether the revised lease was validly entered into by the debtor post-confirmation and without court approval. As the court noted:

> Thus, if property of the estate exists post-confirmation, debtor must seek court approval to effect a modification of the lease, since such a transaction is not in the ordinary course of debtor's business.

72 B.R. at 428. It was the debtor's position that the revised lease was invalid because no court approval had been sought, and therefore the landlord could not enforce its terms.

To resolve the dispute, the *Aneiro* court had to consider whether the 1984 lease remained property of the estate after confirmation, or whether it was no longer property of the estate. If the latter, then the debtor could properly execute the 1986 revision without court approval, and the landlord would be in a position to enforce its terms. If the former, then the 1986 revision was invalid.

The *Aneiro* court reviewed several of the decisions which concluded that § 1327(b) revested all property of the estate in the debtor upon confirmation, absent a provision to the contrary, and that revesting meant the property was no longer property of the estate. The *Aneiro* court took issue with that conclusion. The court wrote: "These cases are premised upon the mistaken belief that revesting under § 1327(b) transforms property of the estate into property of the debtor." 72 B.R. at 429. The court relied on the language of § 1306 regarding closing, dismissal or conversion as evidencing the fact that confirmation is not an event which alters the status of property of the estate. The court wrote:

> The mere revesting of the property in the debtor upon Chapter 13 plan confirmation does not convert property of the estate into property of the debtor. Instead, the revested property remains property of the estate subject to the

terms of the order of confirmation and all the protections of § 362(a). While the debtor may own and possess the property of the estate, he is not free for all purposes to do with it as he pleases. Section 1322(a)(1) provides for "supervision and control" by the trustee over monies and property committed to the plan.... The ownership rights of the debtor in the property of the estate are limited at least to the extent that the property is committed to successful performance under the plan.

72 B.R. at 429–430.

Interestingly, the *Aneiro* court found support for its construction of the effect of § 1327(b) in the legislative history of § 1227 of the Family Farmer Bankruptcy Act of 1986. The court quoted:

The Conferees are concerned that farmers be able to obtain post confirmation credit. The Conferees are in agreement that current law allows Chapter 13 debtors to do so. Because section 1227 is modeled after section 1327, family farmers may provide in their plans for post-confirmation financing secured by assets that have revested in the debtor. *The debtor may also use revested property to the extent it is not encumbered by the plan or order of confirmation to secure post-confirmation credit.*

72 B.R. at 430 (emphasis added). The *Aneiro* court does not discuss the rule of § 1306(b), that property of the estate normally remains in possession of the debtor. Nor does the court discuss what additional power the debtor gains on the revesting of the property after confirmation. Instead, the *Aneiro* court concluded that the 1984 lease "was and at all times remained property of the estate, albeit revested in debtor upon confirmation of his plan...." *Id.* Accordingly, the lease could not be modified post-confirmation without court approval, and the 1986 revision was invalid. However, like the *Clarke* court the *Aneiro* court does not discuss the concept of vesting in light of § 1141(b) or § 349(b)(3). Further, while the *Aneiro* court wrote:

If Congress had intended for confirmation to so drastically affect the expansive definition of property of the estate found in § 1306, it knew how to draft such a provision.

(72 B.R. at 429), the court did not discuss how § 1327(b) retained any meaning at all in light of the court's construction, or that, to the extent possible, statutes are to be construed so as to give effect to both. *Rockbridge v. Lincoln,* 449 F.2d 567, 571 (9th Cir.1971).

In contrast to the cases that accord great weight to the language of § 1306, the vast majority of the cases have given primary effect to § 1327(b), often with little discussion. One of the earliest was *In re Stark,* 8 B.R. 233 (Bankr.N.D.Ohio 1981). In that case, a creditor moved post-confirmation to compel the abandonment of certain personal property. The court found the motion unnecessary, writing:

Because the Debtor's plan did not provide otherwise, all the property of the estate vested, upon confirmation, in the Debtors. Consequently no estate, as is provided for in 11 U.S.C. Section 1306 and Section 541, is in existence.

8 B.R. at 234.

The issue was dealt with in a footnote in *In re Walker,* 20 B.R. 372, 373 at n. 1 (Bankr.E.D.Va.1982). There, the court wrote:

The Trustee questioned whether a debtor has the right to dispose of real estate after confirmation of the Chapter 13 plan. Upon confirmation title to the property of the estate vests in the debtors. 11 U.S.C. § 1327(c)[sic]. The Debtors had an unrestricted right to dispose of the real estate.

The court in *In re Lewis,* 33 B.R. 98 (Bankr.W.D.N.Y.1983) reached a similar conclusion, although with an interesting variation in the facts. In *Lewis,* a post-petition creditor asked for administrative priority in payment of the obligation incurred post-confirmation by the debtor. The confirmation order provided that the debtor's wages and property would remain under the court's jurisdiction, that title to property vested in the debtor, and, importantly, the debtor was enjoined from incurring new debts in excess of $250 without prior

approval of the trustee (except emergency or medical circumstances). Even with the confirmation order language regarding the court's jurisdiction over the debtor's wages and property, the court concluded:

> The stay provisions are inapplicable to Seneca in this case because the debt arose after the commencement of the case.... An action against the debtor is not stayed under 11 U.S.C. § 362(a)(3) which prevents obtaining possession of property of the estate since the confirmation order provided that all the debtor's property revested in the debtor, though, the Court retained jurisdiction thereof.

33 B.R. at 100–101.

*In re Johnson*, 36 B.R. 958 (Bankr.D. Utah 1983) largely follows the earlier decision in *In re Adams*, 12 B.R. 540 (Bankr.D. Utah 1981). The issue in *Johnson* involved a post-confirmation tax refund due the debtors which was paid over by IRS to the Department of Social Services for post-petition child support arrearages. The debtor sought an OSC re: contempt against both the IRS and the state agency. In discussing the character of the monies as property of the estate or not, Judge Clark wrote:

> Thus, in this case the tax refund of $629.00 for the 1982 tax year to which debtors became entitled during the pendency of their case might appear to have been property of the estate protected by the automatic stay which continues in a Chapter 13 case under Section 362(c)(1) until property of the estate is no longer property of the estate....
>
> *Adams*, however, explains that upon confirmation of a Chapter 13 plan, all property of the estate not dedicated to performance of the plan becomes property of the debtor under Section 1327(b). Thus, upon confirmation, debtors' tax refund, which was formerly property of the estate and which was not dedicated to the plan became property of the debtors and subject to the reach of ORS under Section 362(b)(2).... Upon confirmation of debtors' plan on January 23, 1981, ORS was free to collect its post-petition debts for child support from any property of the debtors not dedicated to their plan.

36 B.R. at 959.

In *In re Denn*, 37 B.R. 33 (Bankr.D. Minn.1983) Judge Kressel recognized the argument that § 1327(b) takes the property back out of the estate. He wrote:

> This section [1327(b)] removes, upon confirmation of the plan, property from the estate and revests that property in the debtor, thus reversing the transfer effectuated by the filing of the bankruptcy petition. Arguably then, under this section, confirmation brings the Section 362(b)(2) exception to the automatic stay into effect and would allow the defendants here to collect the arrearages from the debtor's post-petition wages.

37 B.R. at 35. However, Judge Kressel determined he need not resolve the issue because in the case before him the plan did provide otherwise.

The Bankruptcy Appellate Panel of the Ninth Circuit had occasion to consider the operation of § 1327(b) in *In re Winchester*, 46 B.R. 492 (1984). Writing for the BAP, Judge Ashland observed:

> There is no need for a debtor to have the protection of a true exemption in a Chapter 13 case because § 1306(b) allows the debtor to remain in possession of all the property of the estate. Additionally, § 1327(b) vests all of the property of the estate in the debtor upon confirmation of a plan.

46 B.R. at 494. The court elaborated:

> Once the property is revested in the debtor after confirmation, he can do anything with it so long as it is not subject to a lien provided for in the plan or order confirmation. 11 U.S.C. §§ 1327(b) and (c). Thus, during the course of a plan, which can last as long as five years, a debtor may sell, abandon, consume, or trade-in most of his assets. Combining this with the possibility of after-acquired property means that by the time of conversion the estate may have been changed completely in character and amount.

46 B.R. at 495.

The case most often cited in discussing § 1327(b) is *In re Mason*, 45 B.R. 498

(Bankr.D.Or.1984), *aff'd*, 51 B.R. 548 (D.Or. 1985). After confirmation of debtor's Chapter 13 plan, the debt arose, and the creditor obtained a judgment. Subsequently, the creditor caused debtor's wages to be garnished. The debtor filed a complaint to recover the funds, and contended that the actions of the creditor violated the automatic stay. The *Mason* court discussed the operation of § 1327(b) at length:

> Thus, it is contemplated in both chapter 11 (unless a trustee is appointed) and chapter 13, that the debtor remain in possession of all of the property of the estate between the time of the filing of the petition for relief and the order of confirmation. Title to such property, however, remains in the estate and is subject to the control of the court. Upon confirmation, not only does the debtor have the right to possession of the property which was property of the estate, but he is then vested with title to the property of the estate. This title vests in the debtor free and clear of the claims of pre-confirmation creditors except as otherwise provided in the plan or the order of confirmation. No longer is disposition of the property (except as otherwise provided in the plan or the order) controlled by the court. While the debtor has the obligation to comply with the plan and failure to do so could result in dismissal or conversion to chapter 7, the debtor nevertheless may use, sell or lease the property within or outside the ordinary course of business without the necessity of notice and a hearing or order of the bankruptcy court. The debtor's right of control of the property is the same as if no bankruptcy case had ever been filed except to the extent that the plan or order confirming the plan provides otherwise. Post-confirmation creditors may deal with the debtor as if no bankruptcy case were pending.

45 B.R. at 500. In affirming the bankruptcy court's decision, the district court expressly recognized the apparent conflict between § 1306 and § 1327(b). However, the court concluded:

> ... that conflict can be resolved by concluding that the debtor's wages go into the estate pursuant to 11 U.S.C. § 1306 as long as the estate exists or until the case is "closed, dismissed or converted." But in accordance with 11 U.S.C. § 1327, the estate may cease to exist prior to the case being "closed, dismissed or converted" when the plan so provides and the plan is confirmed.

*In re Mason*, 51 B.R. 548, 550 (D.Or.1985).

As already noted in the discussion of the original *Mason* decision, Judge Hess there observed that Chapter 11 contains provisions identical to § 1327(b). Specifically, 11 U.S.C. § 1141 provides in pertinent part:

> § 1141. Effect of confirmation.
>
> .    .    .    .    .
>
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

Some of the courts which have confronted the issue of § 1327(b) have looked to § 1141 for assistance. *In re Gyulafia*, 65 B.R. 913 (Bankr.D.Kan.1986); *In re Mason*, 45 B.R. 498 (Bankr.D.Or.1984); *In re Johnson*, 51 B.R. 439, 442 (Bankr.E.D.Pa. 1985); *In re Walker*, 84 B.R. 888 (Bankr.D. D.C.1988).

For purposes of the present discussion, one of the more interesting Chapter 11 decisions is *In re Paradise Valley Country Club*, 31 B.R. 613 (D.Colo.1983). In that case, Bankruptcy Judge Brumbaugh (who subsequently authored the *Root* decision) found that a state court suit commenced post-confirmation by a landlord for unlawful detainer did not violate the automatic stay. The district court reported:

> Judge Brumbaugh found that pursuant to 11 U.S.C. § 1141(b), the confirmation of the plan vested all property of the estate in the debtor, and that the stay was therefore not in effect under 362(c)(1) when the suit was commenced.

31 B.R. at 614. In affirming, the district court added:

> I also approve of Judge Brumbaugh's reliance on the recent case of *In re Morgan and Morgan, Inc.*, 24 B.R. 518 (Bkrtcy.S.D.N.Y.1982) which states:

[T]he debtor is not entitled to a permanent umbrella shielding it from all lawsuits while it makes its payments under the plan of arrangement. The order of confirmation marked the commencement of the period when a debtor was weaned from dependence on the bankruptcy court's injunctive powers so as to stand on its own feet with respect to post-confirmation matters.

31 B.R. at 615.

Without conducting an exhaustive review, it is nevertheless apparent that courts which have considered § 1141(b) have had little difficulty in understanding its effect. For example, in *In re Westholt Mfg., Inc.*, 20 B.R. 368 (Bankr.D.Kan.1982), aff'd sub nom., *United States v. Redmond*, 36 B.R. 932 (D.Kan.1984), the court wrote:

The automatic stay of section 362 remains in effect while a Chapter 11 plan is pending confirmation. Upon the plan's confirmation, and simultaneous discharge of the debtor under section 1141(d), however, the automatic stay terminates pursuant to section 362(c) and creditors may proceed to collect *post-confirmation* debts from the debtor. At confirmation, all the property of the estate is vested in the debtor, thereby terminating the estate's existence....

20 B.R. at 372. Accord, *In re Korgan*, 52 B.R. 557 (Bankr.D.Or.1985).

Similarly, in *Prince v. Clare*, 67 B.R. 270 (N.D.Ill.1986), the district court wrote:

Except as otherwise provided in the Plan or the order confirming the plan, the confirmation of the plan vested all of the property of the bankruptcy estate in the debtor Prince. (Citations omitted.) The purpose of revesting the property in the debtor is to make the debtor in possession master of his own fate in the commercial world, free of the press of those creditors to whom he was indebted before he became a Chapter 11 supplicant. (Citation omitted.) After the Plan was confirmed, the bankruptcy court no longer controlled disposition of such property; after confirmation, Prince's control of the revested property was the same as if no bankruptcy case had ever

been filed, except to the extent that the Plan or order confirming the Plan provides otherwise.

67 B.R. at 272.

Returning to a review of cases involving petitions under Chapter 13, it is pertinent to consider the opinion of the Ninth Circuit Court of Appeals in *In re Nash*, 765 F.2d 1410 (1985), particularly inasmuch as the *Aneiro* court believed *Nash* supported its view that revesting property in the debtor upon confirmation does not convert property of the estate into property of the debtor.

At the outset, it is important to recognize that *Nash* did not involve application of § 1327(b), but rather the revesting provision of § 349(b)(3) upon dismissal. The relevant facts were that the Chapter 13 trustee received certain monies through a wage order. Before those monies were distributed the debtors exercised their right to dismiss the Chapter 13 case. After dismissal, the trustee distributed the funds to creditors. In defense of an action brought by the debtors, the trustee and creditor urged that the debtor was bound by the confirmed plan. The bankruptcy court and district court agreed, but the Ninth Circuit reversed. The issue was who owned the funds upon dismissal. The Ninth Circuit wrote:

However, ownership over all of the property of the estate, including the $907.14, vested in the Nashes once the plan was confirmed. 11 U.S.C. § 1327(b). *See* 5 *Collier, supra* note 1, ¶ 1327.01, at 1327-3.

The Nashes' ownership of the $907.14 is further supported by the fact that a Chapter 13 dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). The legislative history of § 349(b) states that "[t]he basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." (Citation omitted.)

765 F.2d at 1414. In order to conclude that *Nash* supports the conclusion in *Aneiro,* one would have to determine that the Congress had two different concepts in mind when it used the terms "revests" and "vested" in § 349(b)(3), as contrasted with the term "vests" in § 1141(b) and § 1327(b). But there is nothing in the legislative history of the several statutes, or in case law to support such a proposition, so far as has been brought to this Court's attention.

The two most recent cases to consider and rule on the issue [the court did not need to resolve the conflict in *In re Littke,* 105 B.R. 905 (Bankr.N.D.Ind.1989)] conclude that revesting under § 1327(b) means the property is no longer property of the estate. *Laughlin v. U.S. I.R.S.,* 98 B.R. 494 (D.Neb.1989); *In re Walker,* 84 B.R. 888 (Bankr.D.D.C.1988). In the latter case, the court wrote:

> The debtor's plan and the order of confirmation did not provide for the residence to remain property of the estate to fund the plan. (Citations omitted.) Therefore, the residence, which had become property of the estate upon filing of the petition by the debtor, revested in debtor upon confirmation of the plan. See 11 U.S.C. Section 1327(b). Accordingly, the residence is no longer property of the estate and the automatic stay does not apply.

*Id.* After noting the contrary decisions in *Clarke* and *Aneiro,* the court continued:

> *Clarke* relies on dictum in *Root* but misconstrues it as holding that *all* property of the estate, not just that used to fund the plan, remains property of the estate upon confirmation despite 11 U.S.C. Section 1327(b). The *Aneiro* Court similarly misconstrues the *Adams* decision.
>
> Moreover, *Clarke* and *Aneiro* disregard numerous cases that have held that the estate ceases to exist in Chapter 11 cases upon confirmation of the plan pursuant to 11 U.S.C. Section 1141(b), the exact analog of 11 U.S.C. Section 1327(b). (Citations omitted.)

Finally, *Clarke* and *Aneiro* assert that 11 U.S.C. Section 1306, which spells out what is property of the estate in a Chapter 13 case, requires property of the estate to remain in the estate upon revesting in the debtor. The residence here is property of the estate by virtue of 11 U.S.C. Section 541, which is incorporated by Section 1306.... However, sections 541 and 1306 do not purport to answer the question of when property of the estate *ceases* to be property of the estate. That question is resolved by resort to such provisions as Section 1327(b) (in the case of a confirmed plan) or 11 U.S.C. Section 349(b)(3) (in the case of a dismissal).

84 B.R. at 888–889.

■ This Court concludes that the reasoning of *In re Mason,* 45 B.R. 498 (Bankr. D.Or.1984) is persuasive and that § 1327(b) means what it appears to say—that is, that upon confirmation property of the estate vests in the debtor and is no longer property of the estate, unless the plan or order of confirmation provides otherwise. There are multiple reasons why this Court arrives at that conclusion.

In this Court's view, canons of statutory construction support such a result. As the district court observed in *Laughlin v. U.S. I.R.S.,* 98 B.R. 494 (D.Neb.1989):

> A basic doctrine of statutory construction declares that where possible, two statutes must be read so as to give meaning to each statute.

98 B.R. at 496. Given that § 1306(b) gives debtors possession of property of the estate, § 1327(b) would be rendered meaningless if it were not found to vest title and ownership in the debtor upon confirmation (absent a provision to the contrary in the plan or order of confirmation). See *Rockbridge v. Lincoln,* 449 F.2d 567, 571 (9th Cir.1971).

Similarly, when § 1306(a) and § 1327(b) are compared to each other, this Court believes § 1327(b) is the more specific statute relating to the circumstances. It is a traditional canon of construction that the specific statute controls the more general statute in the face of an apparent conflict.

As already discussed, the terms of § 1141(b) and § 1327(b) are identical. The Congress is not to be presumed to have intended different meanings when it uses identical language in different sections. To the same extent, the Congress should not be presumed to have intended different meanings when it used the words "revests", "vested", and "vests" in 11 U.S.C. §§ 349(b)(3), 1141(b), and 1327(b) absent some indication to that effect.

There are policy reasons, also, which support such a conclusion. The legislative history of § 1227, cited by the court in *In re Aneiro*, 72 B.R. 424, 430 (Bankr.S.D.Cal. 1987), makes it clear that the drafters of that section wanted debtors to be able to obtain credit after confirmation of a plan. They recognized that a debtor's ability to utilize the revested property of the estate was important to achieve that end. See, also, *In re Mason*, 45 B.R. 498, 500 (Bankr. D.Or.1984). The Bankruptcy Appellate Panel of the Ninth Circuit recognized in *In re Winchester*, 46 B.R. 492, 495 (1984) that § 1327(b) gave the debtor the power to do so post-confirmation.

Parenthetically, the Court notes that standard language in the plans regularly used in this district appear to recognize the debtor's ability to freely deal with property post-confirmation because it attempts to restrict that ability. The language provides: "Trustee may file to dismiss case if debtor(s) incur post petition debts without the written consent of trustee and debtor(s) fail to keep such obligations current in payment."

The court in *In re Mason*, 45 B.R. 498, 501 (Bankr.D.Or.1984) noted: "Unlike the pre-petition creditors, the post-petition creditor has no opportunity to object to confirmation of the plan." Even the court in *In re Clarke*, 71 B.R. 747, 749–750 (Bankr.E. D.Pa.1987) observed:

> In one sense, it seems unfair that postpetition creditors ... are in any way stymied in attempting to collect their debts. Carrying this concept too far may make a Chapter 13 post-confirmation debtor a credit pariah, with whom no person informed of his status would deal.

Of course, there are countervailing policy considerations, as well. As characterized by the *Clarke* court:

> On the other hand, a debtor who is making his best financial effort to pay all of his creditors equally under a Chapter 13 Plan should not have his scarce resources and "property of the estate" invaded and the Plan doomed to failure because of a claim from an upstart postpetition creditor.

71 B.R. at 750. More specifically, the prepetition creditors have an interest in a debtor being able to perform throughout the operation of the plan without post-petition creditors being able to deprive the debtor of the ability to do so by seizing property or wages.

█ It remains for this Court to apply its conclusion to the facts in the case at bar. As noted in earlier discussion, the facts of *In re Adams*, 12 B.R. 540, 543 (Bankr.D.Utah 1981) illustrate a practical problem. There, the court found that the ex-spouse, post-confirmation, "has the right to proceed against the wages of the debtor in the amount they exceed the payments to the trustee under the plan. . . ." But the court did not tell us how the monies to fund the plan were identified sufficiently to give notice to creditors which dollars were committed to plan payments and which were property of the debtor post-confirmation because not committed.

In the case at bar, there was approximately $8,500 in debtor's account when the IRS served its levy. Which of those $8,500 were committed to the $1,800 monthly plan payment? What about the next month's plan payment? What about the funds necessary to support the debtor from month to month which, if seized, could prevent the debtor from making the plan payments? In this Court's view, it is not enough to say the funds necessary to make plan payments remain property of the estate and thus subject to the automatic stay, because the funds generally have no independent identity. Under such circumstances, a debtor could play a shell game on post-petition creditors, always claiming the non-committed funds are under a different shell

from the one the creditor seized. Such a result is not consistent with the purposes of the Code or with the policy to permit post-confirmation borrowing by debtors.

The confirmed plan in the instant case provides:

> Debtor submit [sic] all future income to the supervision and control of trustee during the pendency of this case and agree to pay sufficient funds to the Trustee on or before five years from commencement of this case to fully complete this Plan.

However, in this Court's view, the "supervision and control" language in the plan is insufficient to postpone revesting in the debtor under § 1327(b). *Laughlin v. U.S. I.R.S.*, 98 B.R. 494, 496 (D.Neb.1989). If a debtor seeks to postpone revesting of all or some of the property of the estate, the plan or order of confirmation should clearly say so. Saying so is easy to do. In *In re Denn*, 37 B.R. 33, 36 (Bankr.D.Minn.1983), the plan provided:

> "... Debtor submits all future earnings or other future income to such supervision and control of the trustee as is necessary for the execution of the Amended Plan. *Property of the estate shall vest in the Debtor upon dismissal, conversion or discharge* under 11 U.S.C. 1307 or 1328 except as the Court for cause may order otherwise while the case is pending." (Emphasis added.)

In *In re Walker*, 67 B.R. 811, 812 at n. 3 (Bankr.C.D.Cal.1986), the court noted:

> However, paragraph X of Walker's plan provides: "Property of the estate shall revest in the Debtor at such time as a discharge is granted or the case is dismissed."

In this Court's view, the better approach, as recognized by many of the cases, is that revesting of all of the property of the estate occurs upon confirmation as contemplated by § 1327(b), unless revesting is expressly postponed, as authorized by § 1327(b). If revesting of less than all of the property of the estate upon confirmation is contemplated, the plan or order of confirmation should clearly identify which property is to remain property of the estate. If the debtor wishes the benefits of the revesting of property upon confirmation, the debtor should bear the correlative burdens. Alternatively, if the debtor wishes to ensure that the property is secure from post-petition creditors, the debtor may propose to delay revesting. The latter circumstance appears to be common in the Central District of California. *In re Ellis*, 60 B.R. 432, 434 (9th Cir.1985); *In re Walker*, 67 B.R. 811, 812 at n. 3 (Bankr.C. D.Cal.1986); *In re Hill*, 3 CCH ¶ 71, 610 (Bankr.C.D.Cal.1986); *In re Stucka*, 77 B.R. 777, 782 (Bankr.C.D.Cal.1987).

### Conclusion

For all the foregoing reasons, the Court finds that the funds in debtor's account at the time of the IRS levy were not property of the estate because they had revested in the debtor. Because the IRS was seeking to collect on post-petition debt from property of the debtor, not property of the estate, the automatic stay of § 362 did not bar the levy. Accordingly, debtor's motion for sanctions pursuant to 11 U.S.C. § 362(h) is denied.

IT IS SO ORDERED.