**SHELL OIL CO., Plaintiff,**

v.

**CAPITAL FINANCIAL SERVICES, et al., Defendants.**

Civ. A. No. H–91–3376.

United States District Court, S.D. Texas, Houston Division.

Aug. 15, 1994.

Richard J. Zook, Fulbright & Jaworski, Houston, TX, for Shell Oil Co.

Lee M. Larkin, Fouts & Moore, Houston, TX, for Capital Financial Services.

Stephanie McClure, Ramona Stephens Notinger, Dept. of Justice, Tax Div., Dallas, TX, for U.S.

James E. Gibson, pro se.

Linda D. King, Winstead Sechrest & Minick, Houston, TX, for Jane M. Troutner, Vernon Edgar Williams, Robert P. Kehl, Jr., William Roy Martin, Jonathan J. Weidner, Gabriel Cox and Robert A. Reed, movants.

## OPINION ON SUMMARY JUDGMENT

HUGHES, District Judge.

### 1. *Introduction.*

Shell Oil Company interpleaded $114,557. Capital Financial Services, the Internal Revenue Service, and six employees of Gibson Computer Associates claim these funds; each has requested summary judgment. The IRS has the superior claim and will prevail.

### 2. *Background.*

In April of 1980, Gibson Computer Associates contracted with Shell Oil Company to furnish it with computer programming. The agreement said that Gibson would be paid through an hourly-rate schedule on the presentation of an invoice.

On February 11, 1988, Gibson filed for Chapter 13 Bankruptcy. On August 14, 1989, the Internal Revenue Service made its first of several assessments against Gibson for unpaid taxes. To obtain post-petition financing, Gibson signed an agreement with Capital Financial Services on March 29, 1990. Under the agreement, Capital would purchase selected accounts receivable from Gibson for 93% of their face value. The agreement allowed Gibson to choose the accounts it would sell, and it allowed Capital to refuse to purchase an account. Gibson immediately informed Shell of the agreement and instructed it to pay Capital directly. On April 9, Capital filed a financing statement with the county clerk.

The IRS filed its notice of tax lien against Gibson on September 17, 1990. On September 24, 1991, the IRS served Shell a notice of levy, demanding that it turn over the money it owed Gibson.

Gibson employees worked for Shell from July 16 until November 8, 1991. Gibson sold the invoices for this work to Capital; however, because of the IRS levy, Shell did not know whether Capital or the IRS had the superior claim to the money.

Shell filed this lawsuit against Gibson, Capital, and the IRS and interpleaded $114,557. Shell asks that the court determine who has the superior claim to the funds. Jane Troutner, Vernon Williams, Robert Kehl, Jr., William Martin, Jonathan Weidner, Gabriel Cox, and Robert Reed, all Gibson employees, intervened.

The IRS and the employees have moved for summary judgment. Capital has moved for judgment against the IRS. Capital and the IRS each contends that it has a superior claim to all of the interpleaded funds. The employees argue that their claim is superior to $61,653.19 of the funds.

### 3. *Chronology.*

April 2, 1980: Gibson and Shell agree for programming "as may be required."

February 11, 1988: Gibson files for Chapter 13 Bankruptcy.

May 23, 1988: Gibson's Chapter 13 reorganization plan is confirmed.

August 14, 1989: IRS makes its first assessment against Gibson for 1988 taxes.

March 29, 1990: Gibson signs a security agreement with Capital and tells Shell.

April 9, 1990: Capital files notice of its security agreement.

May 21, 1990: IRS makes its first assessment against Gibson for 1989 taxes.

September 17, 1990: IRS files a tax lien against Gibson for 1988 taxes.

September 25, 1990: IRS files a tax lien against Gibson for 1989 taxes.

July 16—November 8, 1991: Gibson employees perform computer programming services for Shell.

September 24, 1991: Shell receives notice of levy from the IRS.

November 15, 1991: Shell files lawsuit and interpleads $102,002.

December 5, 1991: Employees file their first affidavits for a lien against Gibson.

January 14, 1992: Shell interpleads an additional $12,555.

February 27, 1992: Employees move to intervene.

April 10, 1992: Gibson's bankruptcy is dismissed.

### 4. *The IRS Versus the Employees.*

The employees claim a right to $61,653.19 of the funds. They contend that their claim is superior because both Capital and the IRS's liens violated the automatic bankruptcy stay causing them to be void. The IRS's claim has priority over the employee's claim because the IRS's lien did not violate the stay and was filed earlier than the employee's lien. In addition, the employees lack standing to assert a violation of the stay.

### A. *Automatic Bankruptcy Stay.*

An automatic stay began when Gibson filed for Chapter 13 bankruptcy. 11 U.S.C. § 362(a). The stay prohibits acts to exercise control over property of the estate, including the creation, perfection, and enforcement of liens against the property of the estate. 11 U.S.C. §§ 362(a)(3) & (4). It also prevents the creation, perfection, and enforcement of liens against the property of a debtor, but it does this only to the extent that those liens secure claims that arose before the bankruptcy case began. 11 U.S.C. § 362(a)(5). The stay continues to prohibit acts against the property until it is no longer property of the estate. 11 U.S.C. § 362(c)(1). For other acts, the stay continues until the case is closed, the case is dismissed, or a discharge is granted or denied. 11 U.S.C. § 362(c)(2).

### B. *Property of the Estate.*

■ The stay that automatically protects the property of the bankruptcy estate did not apply to the IRS's acts because the funds were not the property of the estate. After confirmation of Gibson's bankruptcy plan, the funds became the property of Gibson, and the automatic stay, as it applied to acts against property of the estate, was terminated.

When the court confirms a plan, the property of the estate vests in the debtor unless the plan says otherwise. 11 U.S.C. § 1327(b). When property vests in the debtor, it is no longer property of the estate. Because the automatic stay, as it

applies to acts against property of the estate, ends when the property is no longer property of the estate, confirmation of a bankruptcy plan terminates the stay. *See In re Lambright,* 125 B.R. 733, 734–35 (Bkrtcy.N.D.Tex.1991) (Judge Felsenthal).

When Gibson's bankruptcy plan was confirmed on May 23, 1988, the property in the estate vested in Gibson. The IRS did not make an assessment against Gibson until August of 1989. Since the assessment was against Gibson's property, not property of the bankruptcy estate, the IRS's assessment and lien did not violate the protections provided to the property of a debtor's estate.

### C. *Post–Petition Debt.*

■ The automatic stay protecting the property of the debtor does not apply to the IRS's lien because its claim, which the lien secures, arose after the bankruptcy case began.

The stay prohibits the enforcement of liens against the property of the debtor only when those liens secure a debt that arose before the commencement of the bankruptcy. 11 U.S.C. § 362(a)(5). The IRS's liens secured 1988 and 1989 taxes and penalties. Since Gibson filed for bankruptcy in February of 1988, the IRS's claims arose after the petition in bankruptcy; they were not in violation of the stay.

### D. *Bankruptcy Dismissed.*

■ Even if the stay would have prevented the IRS's liens, Gibson's bankruptcy was dismissed in April of 1992. The dismissal of the case revested all of the property in Gibson, leaving the IRS free to enforce its liens.

■ Liens that violate the automatic stay are voidable at the trustee's discretion, but they are not automatically void. *In re Sports & Science, Ind., Inc.,* 95 B.R. 745 (Bkrtcy.C.D.Cal.1989); *See also* 11 U.S.C. § 549. When a bankruptcy is dismissed, the property of the estate revests in the entity that held the property immediately before the case began. 11 U.S.C. § 349(b)(3). The dismissal also ends the automatic stay and it "acts, in effect, as a grant of relief from any automatic stay...." 11 U.S.C. § 362(c)(2)(B); *Norton v. Hoxie State Bank,* 61 B.R. 258, 260 (D.Kan.1986).

If the automatic stay was in effect when the IRS filed its lien against Gibson, the dismissal of the bankruptcy case terminated the stay and vested the interpleaded funds in Gibson. Since the trustee of Gibson's bankruptcy estate never avoided the IRS lien, the dismissal, essentially, acts as a grant of relief from the stay. Rather than void the lien, the dismissal voids the stay, and voids it from its inception. Gibson's funds from Shell are covered by the IRS's lien.

### E. *Employees' Standing.*

■ The employees lack standing to assert a violation of the automatic stay. An individual who is injured by a willful violation of the automatic stay may recover damages. 11 U.S.C. § 362(h). This private right of action extends to both debtors and creditors. Only the estate through a trustee or a debtor in possession may avoid a lien that violated the stay. *Matter of Pointer,* 952 F.2d 82, 87 (5th Cir.1992), *cert. denied,* —— U.S. ——, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992); 11 U.S.C. § 549(a).

The employees are attempting to void the IRS's lien by asserting a violation of the stay. They are not representing the estate so they cannot avoid the lien. The employees are not even creditors in Gibson's bankruptcy. They have no standing to complain of a violation of the stay.

### F. *First in Time.*

■ The IRS's interest in the interpleaded funds supersedes the employee's interest because the IRS filed its lien before the employees attempted to file theirs. The principle of "first in time is the first in right" controls when attempting to determine priority between two competing liens. *United States v. City of New Britain, Conn.,* 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). The IRS filed its first notice of a tax lien against Gibson on September 25, 1990. The employees did not

attempt to secure a lien against Gibson until December of 1991. The IRS's claim to the interpleaded funds came first in time, and is superior to the employees' claims.

#### 5. *IRS Versus Capital.*

Capital argues that its security agreement with Gibson was an absolute assignment to Capital of all Gibson's accounts receivable and that Gibson has no interest in those receivables. If this were true, the IRS liens could not attach to the funds, and Capital would have the superior claim to the funds. The agreement between Capital and Gibson was not an absolute assignment; it merely gave Capital a security interest. Gibson retained interests in the receivables, and the IRS liens could attach to those interests in the accounts. Since Capital's interest in the accounts was not perfected, not choate, and not protected by tax law, the IRS's claim is superior to Capital's claim.

#### A. *Security Interest.*

■ The express terms of the agreement between Capital and Gibson show that it is not an absolute assignment of Gibson's accounts receivable. Instead, the agreement gives Capital a general security interest in the receivables.

In Texas, a security interest in accounts receivable arises from a transaction that intends a sale of the accounts. Tex.Bus. & Comm.Code § 9.102(a)(1) & (2) (Tex.UCC) (1991). *See also Southern Rock, Inc. v. B & B Auto Supply,* 711 F.2d 683, 685 (5th Cir.1983).

Here, the "security agreement" states that Gibson gave Capital a "security interest" in all of Gibson's present and future accounts receivable. ¶ 27. The agreement gave Gibson the option not to offer an account to Capital and gave Capital to option not to buy an account. ¶¶ 29 and 30. From this language, the security agreement did not assign absolutely Gibson's receivables, but it did give Capital a security interest in the receivables and define an arrangement for the conduct of sales in the future. The arrangement created a double security interest; one was

the security interest that Capital acquired to secure it in backcharges to Gibson, and the other one was the sale of specific accounts after they became choate.

#### B. *First in Time.*

Under Texas law, Capital's security interest was not perfected until the accounts receivable came into existence. Since the receivables did not exist until after the IRS filed its notice of tax lien, the IRS has a superior claim to them.

A security interest is not perfected until it attaches. Tex.Bus. & Comm.Code § 9.303(a) (Tex.UCC) (1991). A security interest cannot attach to accounts receivable until they come into existence. *MBank El Paso Nat'l Ass'n v. Featherlite Corp.,* 792 S.W.2d 472, 475 (Tex.App.—El Paso 1990, writ denied).

The accounts receivable did not begin to come into existence until July of 1991; therefore, Capital's security interest was not perfected when the IRS filed its notice of lien in September of 1990. Since the general rule for determining the priority of claims is first in time, first in right, the IRS's claim has priority. *See United States v. City of New Britain, Conn.,* 347 U.S. at 85, 74 S.Ct. at 370.

#### C. *Choateness.*

■ Even if Capital's claim was first in time, it would not have priority over the IRS's lien. Capital's security interest did not attach until the receivable became choate, and that occurred after the IRS filed its notice of tax lien against Gibson. Since Capital's claim must be choate to have priority over a the IRS's lien, the IRS has a superior claim to the funds.

■ The principle of choateness is a corollary to the first in time, first in right rule. A private claim must be choate to have priority over a federal tax lien. Three elements establish that an interest in property is choate:

(1) The identity of the debtor's obligor,

(2) The property subject to the lien, and

(3) The amount of the lien.

*United States v. City of New Britain, Conn.,* 347 U.S. at 85–86, 74 S.Ct. at 370–71; *Texas Oil & Gas Corp. v. United States,* 466 F.2d 1040, 1045 (5th Cir.1972).

Capital's claim was not choate on March 29, 1990, when Gibson signed the security agreement because the receivables did not exist. Neither the property subject to Capital's lien nor the amount of the lien could be established. Capital's claim could not become choate until Gibson worked for Shell; that is when the receivables that produced these funds came into existence. Since Gibson began to perform services for Shell on July 16, 1991, Capital's security interest was not choate when IRS filed notice of its tax lien against Gibson on September 17, 1990—ten months earlier.

### D. *Tax Code.*

The tax code protects some inchoate security interests from competing tax liens. 26 U.S.C. § 6323(c). For a security interest in accounts receivable to be protected, a specific account must actually exist within 45 days of the filing of a tax lien. 26 U.S.C. (c)(2)(B). Also, the receivables must have been purchased within 45 days of the filing of a tax lien. 26 U.S.C. (c)(2)(A).

Capital's claim to the receivables is not protected by the tax code because its security interest did not exist within 45 days of the filing of the IRS lien. The IRS filed its notice on September 17, 1990. The receivables did not begin to accrue until mid-July of 1991, ten months after the filing of the tax lien.

In addition, Capital's security interest is not protected because it did not purchase these specific receivables within 45 days of the filing of the tax lien. The security agreement between Gibson and Capital says that "Capital will not purchase an account unless such account is first submitted to Capital ... for approval. Capital is not obligated to buy any account." ¶ 30. These specific receivables did not exist within 45 days of the IRS filing; therefore, Capital could not have approved and purchased them within that period.

Because Capital does not qualify for the tax-code protection, the IRS's claim to the interpleaded funds has priority over Capital's claim.

### 6. *Conclusion*

Since the IRS has the superior claim to the interpleaded funds, its motion for summary judgment will be granted. The employees' motion for summary judgment and Capital's motion for judgment will be denied.

### FINAL JUDGMENT

1. The United States recovers $114,557 on its motion for summary judgment (# 25).
2. Capital Financial Services's motion for judgment against the United States (# 22) is denied.
3. Jane M. Troutner, Vernon Edgar Williams, Robert P. Kehl, Jr., William Roy Martin, Jonathan J. Weidner, Gabriel Cox, and Robert A. Reed's motion for summary judgment (# 16) is denied.
4. Jane M. Troutner, Vernon Edgar Williams, Robert P. Kehl, Jr., William Roy Martin, Jonathan J. Weidner, Gabriel Cox, and Robert A. Reed's motion to refer the case to bankruptcy court (# 33) is denied.
5. James E. Gibson's motion for the disbursal of the funds (# 46) is denied.