
**In re Malcolm W. COWEN and Susan E. Cowen, Debtors.**

**Bankruptcy No. 95–94012.**
**Motion Control No. DN–1.**

United States Bankruptcy Court,
E.D. California,
Modesto Division.

April 9, 1997.

Jeremy L. McPherson, Sacramento, CA, Special Assistant U.S. Attorney, for Internal Revenue Service.

Dan Nelson, Modesto, CA, for Malcolm W. Cowen and Susan E. Cowen.

## MEMORANDUM DECISION

MICHAEL S. McMANUS, Bankruptcy Judge.

The chapter 13 debtors have objected to the priority claim of the Internal Revenue Service (IRS) for income taxes and interest for tax years 1989 and 1991. The debtors contend that this claim is not entitled to priority status because the returns for these years were due more than three years before the filing of their current chapter 13 petition.

The court holds that when the IRS, because of a prior bankruptcy filing, does not actually have three years to both assess and collect an income tax prior to the filing of a second petition, as is the case here, the three-year priority period of 11 U.S.C. § 507(a)(8)(A)(i) is suspended to the extent it overlaps with the automatic stay triggered by the first petition, plus an additional six months.

### I. Facts

On November 28, 1989, the debtors filed their first chapter 13 petition. It was dismissed on August 23, 1993. The debtors' current chapter 13 petition was filed on December 5, 1995.

The Internal Revenue Service (IRS) filed a proof of claim on January 29, 1996, but amended it on March 11, 1997. The debtors' objection puts in issue the priority status claimed for income taxes and interest owed for tax years 1989 and 1991.

The debtors did not file a federal tax return for 1989. The IRS, therefore, assessed separate deficiencies against the debtors. The amended proof of claim shows unsecured priority claims for 1989 as follows: (a) tax of $1,863.00 assessed November 1, 1993, and interest of $1,518.61 under Malcolm Cowen's social security number; and (b) tax of $902.00 assessed May 10, 1993, and interest

of $1,622.55 under Susan Cowen's social security number.

The debtors filed their 1991 federal income tax on April 20, 1992. It showed an unpaid tax liability of $285.00. The IRS assessed this tax on June 8, 1992, and included it in its amended claim with interest of $95.99. As with the claim for 1989 taxes, the IRS asserts that this claim is entitled to priority under 11 U.S.C. § 507(a)(8)(A)(i).[1]

The 1989 and 1991 tax returns were due after the filing of the first petition but before its dismissal. The 1989 return was due more that five years and seven months before the second petition and the 1991 return was due more than three years and seven months before the second petition. If the three-year priority period of section 507(a)(8)(A)(i) is not suspended, then, the claim for each of these years is not entitled to priority status in the second case.

If this period is suspended pursuant to 11 U.S.C. § 108(c)[2] and 26 U.S.C. § 6503(h)[3], the three-year priority period would not begin to run until February 23, 1994, six months after August 23, 1993, the date on which the first petition was dismissed. Since December 5, 1995, the date of the second petition, is one year and 285 days after February 23, 1994, the IRS' claim for taxes and interest for 1989 and 1991 would be entitled to priority treatment.

## II. Discussion

■ The debtors maintain that the taxes and interest for 1989 and 1991 are not entitled to priority under section 507(a)(8)(A)(i) because the returns for these years were due

more than three years before the filing of their second chapter 13 petition.

The IRS counters that the first petition suspended the three-year priority period of section 507(a)(8)(A)(i), because it could not collect the subject taxes during the first case by virtue of the automatic stay. *See* 11 U.S.C. § 362(a)(3). The length of the suspension equaled the amount of time the priority period overlapped with the automatic stay created by the first petition, plus an additional six months. The IRS argues that three-year period did not begin to run until February 23, 1994, six months after the dismissal of the first case, because the 1989 and 1991 tax returns were due during the pendency of the first case. The IRS concludes that it did not lose its priority because that date, February 23, 1994, is within three years of the date that the second petition was filed.

The court concludes that IRS is correct to assert priority status for its claim.

### A.

Section 507(a)(8)(A) "creates a 'delicate balance' between priority and discharge of tax claims. *In re Official Comm. of Unsecured Creditors of White Farm Equip. Co.*, 943 F.2d 752, 757 (7th Cir.1991), *cert. denied*, 503 U.S. 919, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992)." *In re West*, 5 F.3d 423, 426 (9th Cir.1993). The section reflects the intent of Congress "to give the government the benefit of certain time periods to pursue its collection efforts." *In re West*, 5 F.3d at 426. For the same reason, if a tax claim relates to a

---

1. 11 U.S.C. § 507(a)(8)(A)(i) provides:
    "(a) The following expenses and claims have priority in the following order:
    
    .    .    .    .    .
    
    (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
    (A) a tax on or measured by income or gross receipts—
    (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition ..."

2. 11 U.S.C. § 108(c) provides in relevant part:
    "[I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil

action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
    (1) the end of such period ...; or
    (2) 30 days after notice of the termination or expiration of the stay under section 362...."

3. 26 U.S.C. § 6503(h) provides in relevant part:
    "The running of the period of limitations provided in section 6501 or 6502 on ... collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from ... collecting and—
    
    .    .    .    .    .
    
    (2) for collection, 6 months thereafter."

tax year for which a tax return could have been filed within three years of a petition, it cannot be discharged in a chapter 7 case and must be paid in full in a chapter 13 case. 11 U.S.C. §§ 523(a)(1) and 1322(b)(2); *Brickley v. United States (In re Brickley)*, 70 B.R. 113 (9th Cir. BAP 1986); *In re West*, 5 F.3d at 426.

### B.

But these general propositions are not in dispute. In this case, the court must determine if the three-year priority period of section 507(a)(8)(A)(i) is suspended when the tax returns for the subject taxes and interest were due during the pendency of the first case.

The courts in *Brickley* and *West* were confronted with a similar question. In each of these cases, the debtors were assessed income taxes prior to filing their chapter 13 petitions. Tax returns for these taxes were due within three years of their petitions. The taxes, then, were priority claims under section 507(a)(8)(A)(i). Both petitions were dismissed before these taxes were paid in full. Then the debtors filed another petition, a chapter 7 petition in *Brickley* and a chapter 13 petition in *West*. The debtors maintained that the taxes were no longer entitled to priority treatment and could be discharged because the three-period had expired.

Each court disagreed with the debtors, finding that 11 U.S.C. § 108(c) and 26 U.S.C. § 6503 acted to toll the priority periods of section 507(a)(8)(A).

Section 108(c) extends non-bankruptcy statutes of limitation for the longer of the limitation period or 30 days following notice of the termination or expiration of the automatic stay of 11 U.S.C. § 362(a). Section 6503(h)[4] suspends the limitation period on

tax collection until six months after the dismissal of a petition. Section 6503(h) represents a nonbankruptcy statute of limitation which is within the scope of section 108(c). *In re West*, 5 F.3d at 425. Therefore, the period to assess or collect the taxes is suspended for the period a bankruptcy petition is pending plus an additional six months.

But, unlike section 6503(h), the three-year priority period of section 507(a)(8)(A)(i) is obviously not a *non*-bankruptcy statute of limitation. Nonetheless, the court in *West* found that the policy behind section 108(c) and section 6503(h) also warranted suspending the priority periods of section 507(a)(8)(A).

"Interpreting § 108(c) literally would allow a debtor to create an 'impenetrable refuge' by filing a bankruptcy petition, waiting for § 507(a)[ (8) ]'s priority periods to expire, and then dismissing the case and refiling shortly thereafter. [Citation omitted.]

. . . . .

Given the clearly-expressed statutory purpose of providing the IRS with a specific period of time within which to collect taxes, '[s]uch a result is neither required by, nor consistent with, a holistic interpretation of the Bankruptcy Code.' [Citation omitted.]"

*In re West*, 5 F.3d at 426.[5]

### C.

This case is distinguishable from *West* and *Brickley* in one respect. The returns for the taxes at issue in this case were not due prior to the filing of the first petition, but during the pendency of the first bankruptcy case. The debtors argue that this distinction is significant for four reasons.

---

**4.** The court in *Brickley* dealt with subsection (b) rather than subsection (h) of 26 U.S.C. § 6503. Both are very similar. Subsection (b) suspends limitation periods when the assets of a taxpayer are in the custody of a court of the United States. In 1990, subsection (h) was added to section 6503. This subsection suspends limitation periods when the IRS is prevented from assessing or collecting a tax because of a bankruptcy case.

**5.** In *Brickley* the first petition was under chapter 13 and the second under chapter 7. The court

concluded in the subsequent chapter 7 case, that the debtor's taxes were nondischargeable under 11 U.S.C. § 523(a)(1) even though the debtor's tax returns were due more than three years before the chapter 7 petition. Since nondischargeable taxes are also priority taxes, the court's conclusion necessarily means that the priority periods of section 507(a)(8)(A) were suspended because of the delay caused by the first petition. *In re Brickley*, 70 B.R. at 116.

■ First, the debtors maintain that the result in *West* and *Brickley* was dictated by section 108(c) which is applicable to pre-petition but not post-petition claims. However, this interpretation of section 108(c) is incorrect. There is no language in that section which limits it to claims arising prior to the petition. Section 108(c) refers only to "a claim against the debtor."

"Claim" is defined in section 101(5) of the code, which provides:

(5) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured . . .

"Claim", then, is neither definitionally limited to pre-petition claims by section 101(5) nor specially confined to pre-petition claims within section 108(c). Other bankruptcy code provisions specify when they are applicable only to pre-petition claims. For example, sections 362(a)(1), (2), (5), (6), and (7) automatically stay certain actions to enforce claims against a debtor and his or her property. 11 U.S.C. §§ 362(a)(1), (2), (5), (6), & (7). These sections expressly limit "claims" to those "that arose before the commencement of the case under this title." This is in sharp contrast to sections 362(a)(3) and (4), which do not temporally qualify "claim" when the claim is being enforced against property of the estate. 11 U.S.C. §§ 362(a)(3) & (4).

No claim, whether pre-petition or post-petition, may be enforced against property of the estate until the automatic stay terminates or expires.

■ Second, the debtors assert that the holding of *West* and *Brickley* should not apply because the IRS had the option of requesting termination of the automatic stay created by the debtors' first petition in order to collect the post-petition taxes from the property of their bankruptcy estate. While it may have had this option,[6] it had no obligation to seek termination or modification of the stay to enforce its claim against the property of the estate, (*Wekell v. United States*, 14 F.3d 32, 34 (9th Cir.1994)), nor is it clear that it would have been entitled to such relief. In the words of the court in *Wekell:*

"The simple rule is also the fairest: So long as a person is listed as a debtor in a bankruptcy petition, everyone is entitled to count on the automatic stay. To the extent the stay tolls the statute of limitations on collection of certain debts, it will do so until the petition is dismissed . . . or the court grants relief from the stay.

. . . The IRS did not obtain a relief from stay; nor was it required to. . . . [T]he statute of limitations on collection of IRS debts . . . was therefore extended. . . . "

*Id.* at 34.

If the debtors had confirmed a chapter 13 plan in their first case which provided that property of the estate revested in them upon confirmation of the plan,[7] the result might have been different. Since the taxes at issue here were due after the filing of the first petition, the IRS was free to assess the taxes without running afoul of the automatic stay.

---

**6.** The IRS did not have an opportunity to request relief from the stay in order to pursue collection of the 1989 tax obligation because the debtors did not timely file their 1989 tax return. Consequently, the IRS did not assess the taxes until after the first case was dismissed.

**7.** Actually, had the plan simply been silent on the point, confirmation of the plan would have resulted in property of the estate being revested in the debtors. 11 U.S.C. § 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, confirmation of a plan vests all of the property of the estate in the debtor." The debtors' plan provided that "[t]itle to the property of the estate shall vest in the debtor as custodian on confirmation of the Plan, but shall otherwise remain property of the estate until discharge is granted or the case dismissed." Since the plan clearly preserves the property of the estate, the significance of the reference to the debtors as custodians is not clear. The court interprets it as an effort to make clear that the debtors rather than the chapter 13 trustee were entitled to the possession and use of the property of the estate. *See* 11 U.S.C. § 1306(b).

11 U.S.C. § 362(a)(1) & (6). And if the plan had revested the property of the estate in the debtors, the IRS could have also attempted to collect the taxes without violating the automatic stay. 11 U.S.C. § 362(a)(3) & (6). The automatic stay only enjoins efforts to collect pre-petition debts from property of debtors. 11 U.S.C. § 362(a)(6). Under these circumstances, the petition would not toll the three-year priority period.

The debtors' third argument plays off this analysis of the effect of revesting. They maintain that, if the property of the estate revests in a debtor after confirmation of a plan, and if that debtor owes pre-petition priority taxes, section 6503 would not apply because the former property of the estate would no longer be subject to the control of the court and no longer protected by the automatic stay. Therefore, a debtor could file a chapter 13 petition, confirm a plan revesting the property of the estate in the debtor, wait for the three-year priority period to expire, dismiss, then file a chapter 7 petition and discharge the taxes or refile a chapter 13 petition and treat the taxes as a general unsecured claim.

This argument ignores, however, the impact of 11 U.S.C. § 1327(a) which states that "[t]he provisions of a confirmed plan bind the debtor and each creditor . . . ." Further, a chapter 13 must provide for payment in full of priority claims. 11 U.S.C. § 1322(a)(2). Whether or not the plan makes provision for such a priority claim, its confirmation binds the IRS and it cannot take any action to enforce any pre-petition priority claim except to the extent permitted by the plan.

Whether it is because of section 362(a) or section 1327(a), in the situation posited by the debtors, the IRS is prohibited "by reason of [the bankruptcy] case from . . . collecting" its pre-petition priority tax claim. 26 U.S.C. § 6503(h). Therefore, section 108(c) and section 6503(h) are fully applicable and, by virtue of the Ninth Circuit's holding in *West*, the three-year priority period is suspended.

The debtors finally argue that because the IRS had the right pursuant to 11 U.S.C. § 1305(a)(1) [8] to file a post-confirmation claim in their first case, the three-year priority period should not be suspended. But the IRS did not file such a claim and could not be required to file one. It should not suffer a prejudice to its claim because it did not do something it was not required to do.

### III. Conclusion

If the IRS, because of a prior bankruptcy petition, does not have three years to both assess and collect an income tax prior to the filing of a second petition, *West* and *Brickley* dictate that the three-year priority period of 11 U.S.C. § 507(a)(8)(A)(i) be suspended to the extent it overlaps with the first petition (or at least as long as the automatic stay created by the filing of the first petition prevents the IRS from collecting the tax), plus an additional six months.

An appropriate order shall issue.

---

**8.** 11 U.S.C. § 1305(a)(1) provides:

"(a) A proof of claim *may* be filed by any entity that holds a claim against the debtor—

(1) for taxes that become payable to a governmental unit while the case is pending . . ." (Emphasis added.)