**In re Brenda Marie JONES, Debtor.**

**California Franchise Tax Board, Appellant,**

**v.**

**Brenda Marie Jones; John T. Kendall, Trustee; United States Trustee, Oakland, Appellees.**

**BAP No. NC–09–1145–BaDJu.**

**Bankruptcy No. 07–43288.**

United States Bankruptcy Appellate Panel for the Ninth Circuit.

Argued and Submitted on Sept. 25, 2009.

Filed Nov. 24, 2009.

Todd M. Bailey, Office of Atty. Gen., Oakland, CA, for Appellant.

Max Cline, Law Offices of Max Cline, Oakland, CA for Appellees.

Before: BAUM,[1] DUNN and JURY, Bankruptcy Judges.

## OPINION

BAUM, Bankruptcy Judge:

Appellant, California Franchise Tax Board ("FTB"), appeals the bankruptcy court's "Decision: Motion For Order Determining That Tax Liability Is Excepted From Discharge" and accompanying "Order Denying Motion For Order Determining That Tax Liability Is Excepted From Discharge" (together "Decision"). We **AFFIRM.**

## I. FACTS

The facts are not in dispute. The parties' stipulated facts are: On July 22, 2002,

---

**1.** Hon. Redfield T. Baum, Sr., Bankruptcy Judge for the District of Arizona, sitting by designation.

Brenda Marie Jones ("Jones" or "Debtor")and her former spouse filed a petition for relief under Chapter 13 of the Bankruptcy Code[2] (the "Prior Case"). The bankruptcy court entered a confirmation order in the Prior Case on September 12, 2002. While the Prior Case was pending, Jones and her former spouse filed their 2002 California income tax return on October 15, 2003. That return was filed timely based on an extension, however, no tax payment was remitted. On September 22, 2006, the Prior Case was dismissed.

On October 5, 2007, Jones filed the present petition for relief under Chapter 7 of the Bankruptcy Code. Jones received her Chapter 7 discharge on January 2, 2008, and the case was closed. On March 12, 2009, the FTB obtained an order reopening the present case in order to file its motion to determine if the 2002 California income tax was excepted from Debtor's discharge. Following a hearing, the Bankruptcy Court on April 8, 2009, entered its Decision which denied the FTB's motion and held that the tax debt was discharged. The FTB appeals.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). This Court has jurisdiction under 28 U.S.C. § 158(a)(1) and (b)(1).

## III. ISSUE

Whether the bankruptcy court erred when it held that a confirmed Chapter 13

plan in Debtor's Prior Case did not toll the three-year lookback period of Section 507(a)(8) for a post-petition tax.

## IV. STANDARD OF REVIEW

No questions of fact are at issue in this appeal; at issue are the bankruptcy court's legal conclusions. We review the bankruptcy court's interpretation of the Bankruptcy Code de novo. *Bankr. Receivables Mgmt. v. Lopez (In re Lopez )*, 345 F.3d 701, 705 (9th Cir.2003).

## V. DISCUSSION

**A. The unnumbered paragraph added at the end of Section 507(a)(8) by BAPCPA does not suspend or toll the three-year lookback period for a post-petition tax.**

██ Section 507(a)(8)(A)(i) provides for priority treatment of unsecured income taxes if the date the return was required to be filed is within three years *before* the petition date.[3] The three year period is known as the "three-year lookback period." By definition, a post-petition tax (such as the 2002 California income tax at issue here) cannot fall within the "three-year lookback period."

██ Priority income taxes are non-dischargeable in a Chapter 7 (and also non-dischargeable for a hardship discharge under Chapter 13). *See* Section 523(a)(1)(A). Priority taxes provided for in a Chapter 13 plan must be fully paid in

---

**2.** Unless otherwise indicated, all "Code," chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, as enacted and promulgated as of October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, 119 Stat. 23.

**3.** Section 507(a)(8)(A)(i) provides, in relevant part, priority status for unsecured income taxes that are "for a taxable year ending on or before the date of the filing of the petition" and "for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition."

order to receive a discharge. *See* Sections 1322(a)(2) and 1328.

 In 2005, BAPCPA added an unnumbered paragraph at the end of Section 507(a)(8) that provides for suspension of the priority time periods under certain conditions, including "any time during which the stay of proceedings was in effect in a prior case ... plus 90 days."[4] The unnumbered paragraph begins "an otherwise applicable time period specified in this paragraph," making it clear that it is the priority time period contained in Section 507(a)(8) that can be suspended. We interpret the phrase "an otherwise applicable time period" to mean that the tax year at issue falls within the three-year lookback period in a prior case and the subject claim is for a priority tax. The use of the word "applicable"[5] limits the tax to a prepetition tax, because only a tax for which the return is due to be filed during the subject period may fall within the three-year lookback period under Section 507(a)(8)(A)(i). An income tax obligation for which the return is due post-petition (here, also post-confirmation) does not meet the priority definition contained in Section 507(a)(8)(A)(i). A post-petition tax is not "capable or suitable" to invoke priority status under Section 507(a)(8)(A)(i) and therefore cannot fall within "an applicable time period" as contemplated by the unnumbered paragraph.

The income tax at issue, for the 2002 tax year, was due (based on an extension granted by the FTB) on October 15, 2003. Debtor's Prior Case was filed on July 22, 2002. The three-year lookback period in the Prior Case is July 22, 1999 to July 22, 2002. Thus, in the Prior Case, the 2002 income taxes would be given priority status under Section 507(a)(8)(A)(i) only if the return recognizing liability for such taxes was required to be filed between July 22, 1999 and July 22, 2002. Since Debtor's 2002 income tax return was due on October 15, 2003, the 2002 income taxes did not fall within the three-year lookback period. Similarly, because the due date for Debtor's 2002 income tax return did not fall within the three-year lookback period, it did not fall within "an otherwise applicable time period," and suspension is inappropriate under Section 507(a)(8)'s unnumbered paragraph.[6]

### B. The principle of equitable tolling expressed in *Young v. United States* is not applicable.

 According to the legislative history, the unnumbered paragraph was added to codify the holding in *Young v. United States*, 535 U.S. 43, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002). In *Young*, the Supreme Court equitably tolled the three-year lookback period during the pendency

---

**4.** The unnumbered paragraph at the end of Section 507(a)(8) provides, in relevant part, "An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of ... any time during which the stay of proceedings was in effect in a prior case ... or during which collection was precluded by the existence of 1 or more confirmed plans ... plus 90 days."

**5.** The Ninth Circuit recently defined "applicable" as used in Section 707(b)(2)(A)(ii)(I) as

"capable or suitable for being applied," citing Merriam–Webster's Collegiate Dictionary 60 (11th ed.2005). *Ransom v. MBNA (In re Ransom)*, 577 F.3d 1026, 1031 (9th Cir.2009).

**6.** In the instant case, the 2002 taxes also do not fall within the three-year lookback period and are thus not entitled to priority status. The Chapter 7 was filed on October 5, 2007. Three years prior thereto begins on October 5, 2004. The 2002 return was due on October 15, 2003, which is outside the three-year lookback period.

of a prior bankruptcy. *Young* dealt with facts significantly different from those before us. In *Young*, the debtors filed a Chapter 13 petition on May 1, 1996. The tax at issue, 1992 federal income tax, was due on October 15, 1993, which *was within* the three-year lookback period (May 1, 1993–May 1, 1996). *Id.* at 44–45, 122 S.Ct. 1036. The Youngs moved to dismiss the Chapter 13 and filed a Chapter 7 on March 12, 1997, one day before dismissal of the Chapter 13. The back-to-back filings in *Young* were an attempt to run out the three-year lookback period. The *Young* Court concluded that:

> Tolling is in our view appropriate regardless of petitioners' intentions when filing back-to-back Chapter 13 and Chapter 7 petitions—whether the Chapter 13 petition was filed in good faith or solely to run down the lookback period. In either case, the IRS was disabled from protecting its claim during the pendency of the Chapter 13 petition, and this period of disability tolled the three-year lookback period when the Youngs filed their Chapter 7 petition.

*Id.* at 50–51, 122 S.Ct. 1036. *Young* found back-to-back petitions relevant in determining that the IRS was disabled from protecting its claim. Here, over a year passed between the dismissal of Jones' Chapter 13 and the Chapter 7 filing.[7]

*Young* applied equitable tolling to pre-petition income taxes that were required to be filed within the three-year lookback period.[8] In this case, the tax did not become due within the three-year lookback period, and Jones did not file back-to-back petitions. *Young* reasoned that the automatic stay disabled the IRS from protecting its pre-petition tax claim during the pendency of the prior Chapter 13. "The Youngs' Chapter 13 petition erected an automatic stay under § 362, which prevented the IRS from taking steps to protect its claim." *Id.* at 50, 122 S.Ct. 1036. As discussed below, we believe the FTB was not disabled from protecting its claim during the pendency of Jones' prior Chapter 13 case.

Because our facts are significantly different from those in *Young*, we conclude that equitable tolling, as applied in *Young*, is inapplicable here.

**C. The FTB was not disabled from protecting its post-confirmation tax claim in the prior Chapter 13 case.**

Notwithstanding our conclusion that the tax at issue does not fall within the three-year lookback period and is therefore not subject to suspension, as to its priority status under the unnumbered paragraph of Section 507(a)(8) or equitable tolling under *Young*, we must still determine if the FTB was disabled from protecting or collecting the tax during the pendency of Jones' Chapter 13 case. If the FTB was disabled from collecting the post-petition tax, then equitable tolling may be appropriate under Section 105.[9] (Although not raised by the FTB, under certain circumstances, Section 108(c)[10] has been used to

---

**7.** There was no confirmed plan in *Young* and therefore no need to discuss the extent of the Section 362 automatic stay as to property of the estate under Sections 1306 and 1327.

**8.** 535 U.S. at 50, 122 S.Ct. 1036 ("The Youngs' 1992 tax return was due within that three-year period.").

**9.** Section 105(a) provides, in relevant part, that "The court may issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of this title."

**10.** The Ninth Circuit has tolled the priority tax period (under what is now Section 507(a)(8)(A)(ii)) using Section 108(c) and incorporating the tolling provision found in Section 6503 of the Internal Revenue Code. *See West v. United States (In re West)*, 5 F.3d 423, 427 (9th Cir.1993). *West* adopted the

toll a priority determination for Section 507(a)(8) taxes.) To determine if the FTB was disabled or barred from collecting the tax, we must analyze what happens to estate property when a Chapter 13 plan is confirmed.

### 1. Sections 362(a), 541 and 1306

Sections 362(a)(3) and (4) stay acts to obtain possession of, exercise control over or create, perfect or enforce a lien against property of the estate. Sections 362(a)(3) and (4) apply to post-petition claims. Section 541 defines property of the estate. Section 1306 further defines property of the estate in Chapter 13 cases to include property defined in Section 541 and broadens the definition to include property acquired and earnings earned after the petition date but before the case is closed, dismissed or converted.[11] Read together, and isolated from the other sections of the Code, Sections 362(a) and 1306 appear to prevent a taxing authority such as the FTB from collecting a post-confirmation

debt because collection would be against estate property and would violate the automatic stay. Put another way, Section 1306 leaves no non-estate property available to satisfy a post-petition debt.

### 2. Section 1327(b)

Section 1327(b) vests all estate property in the debtor upon confirmation unless otherwise provided for in the plan or confirmation order.[12] Under this section unless the plan or confirmation order provides otherwise, a post-petition creditor could attempt post-confirmation collection without violating the automatic stay because all estate property vests in the debtor at confirmation.[13]

### 3. Split of Authority

When interpreting Sections 1306 and 1327, the courts have split into four groups, with each having its own interpretation of the combined meaning of Sections 1306 and 1327(b) on the automatic stay as it applies to property in Chapter 13 cases. The courts have acknowledged the conflict

---

reasoning of *Brickley v. United States (In re Brickley)*, 70 B.R. 113 (9th Cir. BAP 1986). Both *West* and *Brickley* concerned tax returns that were due prior to the filing of the first petition and neither case decided the tolling issue in the context of a confirmed plan.

At least one court within the Ninth Circuit has analyzed *West* and *Brickley* in the context of a post-petition tax in the prior case. *See In re Cowen*, 207 B.R. 207 (Bankr.E.D.Cal.1997). *Cowen* also analyzed the effect of a confirmed plan on estate property and reasoned that had the debtors put in their Chapter 13 plan that estate property revested in the debtors under Section 1327 then "the IRS could have attempted to collect the taxes without violating the automatic stay." *Id.* at 211.

In *Young*, the Supreme Court noted that the courts are split over the issue of whether Section 108(c) contains a tolling provision, and declined to resolve the split. 535 U.S. at 52, 122 S.Ct. 1036. In any event, the FTB has not raised any Section 108(c) argument (requiring a specific tolling provision under California law), thus the issue is not before us.

**11.** Section 1306 provides, in relevant part, "(a) Property of the estate includes, in addition to the property specified in section 541 ... all property ... that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted ... and ... earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted ... (b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate."

**12.** Section 1327(b) provides "Except as otherwise provided in the plan or order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

**13.** *See* Section 362(c)(1) (providing that the stay against property of the estate under 362(a) continues until the property is no longer property of the estate).

between these two sections and noted that they are not models of clarity. The opinions range from holding that all property of the estate remains so until the case is closed, dismissed or converted, to holding that property of the estate terminates upon confirmation. The Ninth Circuit has not decided this issue.[14] The four approaches are:

A. "The estate preservation approach"—Property of the estate exists until the case is closed, dismissed or converted.

Under this approach, property 'vesting' in the debtor does not mean that the estate no longer exists after plan confirmation. No property is transferred from the estate. *See Security Bank of Marshalltown, Iowa v. Neiman,* 1 F.3d 687, 690 (8th Cir.1993) ("We join the line of cases holding the estate continues to exist after confirmation of the Chapter 13 plan. Upon reviewing § 1327 ..., even if property of the estate vests in the debtor at confirmation, that does not necessarily mean that the estate no longer exists."); *Riddle v. Aneiro (In re Aneiro)*, 72 B.R. 424, 429 (Bankr.S.D.Cal.1987):

The mere revesting of the property in the debtor upon Chapter 13 plan confirmation does not convert property of the estate into property of the debtor. Instead, the revested property remains property of the estate subject to the terms of the order of confirmation and all the protections of § 362(a). "The estate preservation approach" line of cases rely on Section 1306(a), and give little effect to Section 1327.

B. "The modified estate preservation approach"—Existing estate property vests in the debtor at confirmation, and estate property continues to exist from post-petition income.

Under this approach, property obtained after confirmation is estate property, subject to the Section 362(a) stay. *See Barbosa v. Solomon,* 235 F.3d 31, 37 (1st Cir. 2000) ("Because we think that this approach has a logical consistency that harmonizes two apparent inconsistent sections...."). *Barbosa* was most concerned with the debtor's ability to continue to make payments under the plan and the pre-petition creditors' interest in preserving that ability. *Id.*

---

**14.** The parties cite to two Ninth Circuit cases that touch on the issue before us: *Nash v. Kester (In re Nash)*, 765 F.2d 1410 (9th Cir. 1985), and *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581 (9th Cir.1993). Although neither case is directly on point, our holding here is supported by the general propositions in both cases.

In *Nash* a Chapter 13 trustee who was holding funds from a wage order disbursed those funds to a secured creditor after the case was dismissed. *Nash* at 1412. Debtor filed a second case the day after the dismissal and claimed the funds held by the trustee exempt under the Section 522(d)(5) wildcard. *Id.* The court stated that the money received before dismissal "was the property of the estate because it was received after commencement of the case but before dismissal." The court further stated, "However, ownership over all of the property of the estate, includ-

ing the [funds disbursed by the trustee] vested in the Nashes once the plan was confirmed. 11 U.S.C. § 1327(b)." *Id.* at 1414. The court then further supported the ownership rationale and cited to Section 349(b). *Nash* held that the trustee made an improper distribution. *Id.* at 1415.

*Hillis* concerned an antitrust suit in a Chapter 11 case. Hawaii dissolved the debtor under State law while the case was pending. The court found that the State exercised control over corporate property when it dissolved the corporation and that under Section 1141(b) (similar language as Section 1327(b)) "confirmation ... ordinarily lifts the automatic stay ... because confirmation usually terminates the existence of the estate." *Hillis* at 587. In *Hillis* the court found an atypical situation because the plan "unambiguously provides for the continuation of the estate post-confirmation." *Id.* at 589.

C. "The estate transformation approach"—Only property needed to fund the plan is estate property, all other property is under the debtor's control.

Under this approach, the view is that the debtor is competent to manage all property not needed to fulfill the plan. Under this approach, at confirmation property of the estate vests in the debtor, and the estate remains funded by way of post-confirmation earnings and acquisitions. *See Matter of Heath,* 115 F.3d 521, 524 (7th Cir.1997):

> We read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan.

In *Heath,* the confirmation order stated "the debtor's income and other assets including accounts receivables (sic) remain estate property to the extent necessary to fulfill the plan." *Id.* at 522–23. *See also Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333, 1340 (11th Cir.2000)("In this case, after confirmation, only the amount required for the plan payments remained property of the estate.").

D. "The estate termination approach"—All property revests in the debtor and estate property is terminated upon confirmation.

Under this approach, all property of the estate vests in the debtor at confirmation. *See In re Petruccelli,* 113 B.R. 5, 15 (Bankr.S.D.Cal.1990):

This court concludes that the reasoning of *In re Mason,* 45 B.R. 498 (Bankr. D.Or.1984) is persuasive and that § 1327(b) means what it appears to say—that is, that upon confirmation property of the estate vests in the debtor and is no longer property of the estate, unless the plan or order of confirmation provides otherwise.

The *Petruccelli* court found:

> Given that § 1306(b) gives debtors possession of property of the estate, § 1327(b) would be rendered meaningless if it were not found to vest title and ownership in the debtor upon confirmation ... § 1327(b) is the more specific statute relating to the circumstances. It is a traditional canon of construction that the specific statute controls the more general statute in the face of an apparent conflict.

*Id. See also Oliver v. Toth (In re Toth),* 193 B.R. 992, 996 (Bankr.N.D.Ga.1996) (finding the *Petruccelli* analysis the most persuasive; policy reasons (being able to obtain credit and use property after confirmation) support concluding vesting at confirmation ends the estate.[15]); *In re Dagen,* 386 B.R. 777, 782 (Bankr.D.Colo. 2008)("only the estate termination approach gives effect to the literal terms of § 1327(b)....").

This approach has been criticized by courts that adopt one of the other approaches as not giving proper effect to Section 1306.

4. *The "estate termination approach" appropriately interprets and gives effect to Sections 1306 and 1327*

■ We agree with the bankruptcy court's interpretation and adopt the estate termination approach for several reasons.

---

**15.** *But see In re Clark,* 71 B.R. 747 (Bankr. E.D.Pa.1987), for the opposite conclusion that policy reasons (protecting debtor and re-sources from post-petition creditors) support continuing the estate post-confirmation.

Under the estate termination approach, the vesting of all estate property in the debtor at confirmation (unless the plan or confirmation order provides otherwise) and the concomitant termination of estate property gives effect to both Sections 1306 and 1327. Section 1306 generally defines property of the estate as all property held by the debtor when the Chapter 13 case is commenced and any property thereafter acquired until the case is "closed, dismissed, or converted." Simply put, Section 1306 establishes the moment when estate property is first created and the outside triggering event which terminates property of the debtor from becoming estate property. Significantly, Section 1306 does not state that property of the estate can only become non-estate property when the case is closed, dismissed, or converted. Section 1327(b) "vests" estate property in the debtor upon confirmation unless the plan or order provides otherwise. The conclusion that "vesting" property of the estate in the debtor terminates estate property is confirmed by Section 1327(c). Section 1327(c) provides that "property vesting in the debtor . . . is free and clear of any claim or interest . . . provided for by the plan." The change in language from "vests . . . property of the estate" to "property vesting in the debtor" is compelling to this Panel's conclusion that confirmation changes estate property to property of the debtor unless the plan or confirmation order specifically provides otherwise.

The estate termination approach effectuates the important choice Section 1327(b) gives to the debtor as to whether property of the estate remains (and to what extent) after confirmation. Section 1327(b) ex-

pressly provides the debtor with the ability to vest in itself all, none, or some combination of estate property. The other three approaches deny the debtor this full choice. The estate termination approach implements a major theme of Chapter 13 by preserving to the debtor the ability to have ownership, as well as possession, of all property. *See* 8 Collier on Bankruptcy ¶ 1327.03, at p. 1327–11 (15th ed. rev.2008).

■ In so holding, we conclude that collection of a post-petition debt can occur against a Chapter 13 debtor who does not otherwise provide in the plan or confirmation order that all property remains property of the estate. This gives effect to Section 1327(b).[16] Conversely, under our holding, if the Chapter 13 plan or confirmation order provides that all or some portion of property of the estate remains property of the estate post-confirmation, then collection of a post-petition debt can only be made against the debtor's property, if any (unless relief from stay is obtained). This interpretation also gives effect to Section 1306.

■ Further, "vests" as used in Section 1327(b) means more than obtaining possession of estate property because Section 1306(b) already provides that debtors remain in possession of all estate property. Otherwise, "vests" as used in Section 1327(b) is superfluous.[17] We conclude that "vests" means absolute ownership, not mere possession.

Our holding that under Section 1327(b) the estate may cease to exist prior to the case being "closed, dismissed, or converted," does not harm bankruptcy policy. Because the debtor is given the choice (subject to court approval), the debtor's

---

**16.** We recognize that the vesting of former estate property back in the debtor does not dissolve the automatic stay with respect to pre-petition claims against the debtor.

**17.** *Petruccelli,* 113 B.R. at 15 (" § 1327(b) would be rendered meaningless if it were not found to vest title and ownership in the debtor upon confirmation. . . .").

decision dictates which competing policy (protect pre-petition creditors and the ability to complete a plan, versus a debtor's access to credit and use of property post-confirmation) the debtor wishes to utilize. Thus, the estate termination approach does not harm bankruptcy policy.

■ Under the estate termination approach, and on our facts, there was no automatic stay in effect at the time the return was filed. Here, estate property revested in Jones on September 12, 2002, when her Chapter 13 plan was confirmed. When she filed her return on October 15, 2003 (on the due date), the taxes were "self assessed." Thus, at the time the taxes were assessed, there was no estate property for the automatic stay to protect,[18] leaving the FTB free to collect on its tax claim.

### 5. *The plan provides that property of the estate vests in the Debtor*

■ Here, the Debtor's Chapter 13 plan provides: "[t]he debtor(s) elect to have property of the estate revest in the debtor(s) upon plan confirmation. Once the property revests, the debtor(s) may sell or refinance real or personal property without further order of the court, upon approval of the Chapter 13 Trustee." Such language clearly expresses Jones' choice to have estate property revest as

her property at confirmation subject to some supervision by the Chapter 13 Trustee. Importantly, Section 1327(b) does not require a debtor to make an affirmative election in order for estate property to vest in the debtor upon confirmation. However, Section 1327(b) does require a debtor to provide in a plan or confirmation order its election to have property remain property of the estate post-confirmation.[19]

### 6. *The confirmation order did not contain language which would prevent revesting in the Debtor under Section 1327(a)*

■ The confirmation order stated: "the future income of the Debtor(s) is submitted to the supervision and control of the Trustee, as is necessary for the execution of the Plan." The FTB argues that such language creates confusion when compared with the plan language that revests estate property in the Debtor. We recognize that ambiguities are to be construed against the debtor who drafted the plan, but we do not see any ambiguity here. According to the FTB, the "supervision and control"[20] language demonstrates Debtors' election that estate property does not cease at confirmation.[21] We disagree. Such language does not rise to the level of triggering the "except as otherwise provid-

**18.** *See Shell Oil Co. v. Capital Financial Services,* 170 B.R. 903, 905 (S.D.Tex.1994)(IRS post-confirmation assessment/lien was not against estate property because confirmation terminates the stay.).

**19.** *Petruccelli,* 113 B.R. at 17("the better approach, as recognized by many of the cases, is that revesting of all of the property of the estate occurs upon confirmation, as contemplated by § 1327(b), unless revesting is expressly postponed, as authorized by § 1327(b).").

**20.** *See* Section 1322(a)(1).

**21.** FTB cites to *In re Allen,* 241 B.R. 710, 719 (Bankr.D.Mont.1999). *Allen* concerned Chapter 13 confirmation issues, holding that "supervision and control" language contained in a plan complies with the Section 1327(b) election, therefore future income remains estate property. We disagree as to the import of such language. *Allen* implicitly recognized that the "supervision and control" language may not clearly postpone revesting when it held: "[t]he confirmation order shall include a provision that all future income of the Debtor from whatever source is necessary for completion of the Plan and thus is property of the estate, and does not vest in the Debtor post-confirmation." *Id.* at 719.

ed" election in Section 1327(b). *See Laughlin v. I.R.S.*, 98 B.R. 494, 496 (D.Neb.1989)("that the trustee retains supervision and control … does not compel the result that such property be labeled 'property of the estate'…."); *Petruccelli*, 113 B.R. at 17 ("If a debtor seeks to postpone revesting of all or some of the property of the estate, the plan or order of confirmation should clearly say so. Saying so is easy to do."). The "supervision and control" language gives the trustee a basis for monitoring and requiring execution of the provisions of the plan. Such language does not negate the revesting of property at confirmation.

### 7. *Equity does not favor the FTB*

The parties have not provided, nor have we found, a case where a taxing authority such as the FTB has been sanctioned for attempting collection post-confirmation on a post-petition debt.[22] We consider this relevant to the FTB's basic premise that the uncertainty caused by the split of authority disabled the FTB's claim.[23] Uncertainty as to the law is different from a taxing authority being "disabled" in protecting its claim, as found in *Young*.

Here, although the FTB did not, it could have sought relief from the stay under Section 362(d) or moved to dismiss[24] Debtor's case in order to confirm its right to collect on its post-confirmation claim. Many of the cases[25] applying equitable tolling under Section 105 concern multiple unpaid tax periods (both pre and post-petition) along with successive and repetitive bankruptcy filings. Such is not the case before us. Based on the facts here, we decline to apply equitable tolling under Section 105.[26]

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the Decision.

---

**22.** On the other hand, the parties cite cases where a taxing authority holding a post-petition claim was permitted to collect post-confirmation. *See Petruccelli*, 113 B.R. at 17 (IRS post-confirmation levy did not violate the stay, thus debtor's motion for sanctions under § 362(h) is denied.); *Laughlin v. I.R.S.*, 98 B.R. at 496 (IRS did not violate the automatic stay in attempting to recover funds post-confirmation held by the Chapter 13 trustee.).

**23.** Over a year passed between dismissal of Jones' Chapter 13 and the Chapter 7 filing. Nothing in the record indicates the FTB moved to collect the tax during that time period. This seems odd, since the essence of FTB's argument is that the automatic stay prevented collection.

**24.** Dismissal may be warranted where a debtor fails to pay post-petition taxes.

**25.** We have previously held that where there is serious inequity the bankruptcy court's equitable authority found in Section 105(a) can be used to suspend the priority tax periods. *See Gurney v. State of Ariz Dep't of Revenue (In re Gurney)*, 192 B.R. 529 (9th Cir. BAP 1996).

**26.** We recognize that the FTB chose to err on the side of caution and avoid what it saw as a potential violation of the stay. We do not fault the FTB for its healthy respect of the automatic stay. Our holding allows a taxing authority, under certain circumstances, to initiate collection for a post-petition tax right away as opposed to waiting perhaps years for a case to be dismissed or discharged.