

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NV-18-1351-FBH |
| RICHARD L. BLACK, | Bk. No.    2:14-bk-12402-ABL |
| Debtor. | |
| RICHARD L. BLACK, | |
| Appellant, | |
| v. | **OPINION** |
| KATHLEEN A. LEAVITT, Chapter 13 Trustee, | |
| Appellee. | |

Argued and Submitted on November 21, 2019
at Las Vegas, Nevada

Filed – December 31, 2019

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable August Burdette Landis, Bankruptcy Judge, Presiding

———

Appearances:    Christopher Burke argued on behalf of appellant Richard L. Black; Sarah E. Smith argued on behalf of appellee Kathleen A. Leavitt, Chapter 13 Trustee.

———————

Before: FARIS, BRAND, and HERCHER,[*] Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Debtor Richard L. Black obtained confirmation of a chapter 13[1] plan that required him to pay $45,000 to his creditors when he sold or refinanced his rental property. About three years later, he sold the property for $107,000. He proposed to pay $45,000 to his creditors and to retain the excess sale proceeds for himself. Chapter 13 trustee Kathleen A. Leavitt ("Trustee") moved to modify Mr. Black's confirmed plan to require him to pay the excess sale proceeds to his unsecured creditors. The bankruptcy court approved the modified plan.

Mr. Black appeals, arguing that he was not required to commit the excess proceeds to his plan payments. He also argues that the Trustee's motion was untimely and that the modified plan did not meet the statutory

———————

[*] The Honorable David W. Hercher, U.S. Bankruptcy Judge for the District of Oregon, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

requirements for plan confirmation.

We hold that the Trustee's modified plan was timely and complied with the applicable statutes. But we agree with Mr. Black that he was entitled to retain the excess sale proceeds. Accordingly, we REVERSE.

## FACTUAL BACKGROUND

### A.    Mr. Black's bankruptcy case

On April 9, 2014, Mr. Black filed a chapter 7 bankruptcy petition that he prepared with the assistance of a bankruptcy petition preparer. He scheduled real property located in Las Vegas, Nevada (the "Property"), valued at $52,300. He claimed a $52,300 homestead exemption in the Property.[2]

The chapter 7 trustee objected to Mr. Black's claimed homestead exemption in the Property, which he did not live in, but rented out at $850 per month. He also moved for turnover of the rental proceeds as nonexempt assets.

Mr. Black received his chapter 7 discharge. Shortly thereafter, Mr. Black (through counsel) moved to convert his chapter 7 case to one under chapter 13. Among other reasons, he stated that, when he initially filed his chapter 7 petition, he did not realize that he could lose the Property. The chapter 7 trustee opposed the motion to convert.

---

[2] Mr. Black also scheduled a second residential property in Las Vegas and similarly claimed a homestead exemption.

3

Before ruling on the motion to convert, the bankruptcy court sustained the chapter 7 trustee's objection to the claimed homestead exemption in the Property and granted the motion for turnover. The bankruptcy court later granted Mr. Black's motion to convert.

Mr. Black filed amended schedules. He identified the Property as a rental property and decreased its value to $44,000.

## B.     The chapter 13 plan

Mr. Black filed his proposed chapter 13 plan in which he proposed paying $250 per month for fifty-nine months, totaling $14,750. He proposed an additional payment of $41,000 in the fourth year upon sale or refinancing of the Property.

The Trustee objected to confirmation of the plan. Among other things, she argued that "[t]he Plan fails to meet liquidation value [11 USC § 1325(a)(4)] based on the following non-exempt property: $44,000 Rental property."

In response, Mr. Black filed an amended plan to address concerns not relevant to this appeal. He still proposed to pay $250 per month for fifty-nine months. But he increased to $45,000 the lump sum payment upon sale or refinancing of the Property.

As a below-average-income debtor, his applicable commitment period was three years. The plan provided:

Monthly payments must continue for the entire commitment

period unless all allowed unsecured claims are paid in full in a shorter period of time, pursuant to § 1325(b)(4)(B). If the applicable commitment period is 3 years, Debtor may make monthly payments beyond the commitment period as necessary to complete this plan, but in no event shall monthly payments continue for more than 60 months.

The plan also provided that "[a]ny property of the estate scheduled under § 521 shall vest in Debtor upon confirmation of this Plan."

The Trustee did not object to the amended plan, and the court confirmed the plan. Mr. Black faithfully made his monthly plan payments for several years.

## C.    The sale of the Property

About three years later, Mr. Black filed a motion to sell the Property ("Motion to Sell"). He stated that he intended to sell the Property for $107,000, pay $45,000 to his unsecured creditors, and retain $50,689 (the remaining amount after costs of sale) for himself.

The Trustee opposed the Motion to Sell. She stated that she did not object to the sale of the Property but objected to Mr. Black retaining any of the proceeds of the sale. She argued that the proceeds were property of the chapter 13 estate under § 541 as "property that the debtor 'acquires after commencement of the case but before the case is closed, dismissed, or converted'" under § 1306(a)(1). She stated that Mr. Black did not claim an exemption in the Property, so he must turn over all funds stemming from

the sale of the Property to the Trustee for distribution to creditors.

The bankruptcy court found that the Property was property of the estate and that the sale was a reasonable exercise of Mr. Black's business judgment. It granted the Motion to Sell ("Sale Order") and ordered that $49,000 should be paid to the Trustee and that the remaining funds should be held by Mr. Black's attorney pending further order of the court.

## D.    The Trustee's motion to modify the plan

The Trustee filed Modified Chapter 13 Plan #3 ("Modified Plan"), which amended Sections 1.08, 1.09, and 1.10 of the confirmed plan to commit the additional $52,000 sale proceeds to the plan. As such, the estate would receive: (1) the fifty-nine monthly payments of $250 per month, (2) $49,000 from the sale of the Property pursuant to the Sale Order, and (3) the additional $52,000 sale proceeds. She stated that the Modified Plan would require Mr. Black to "pay all disposable income to the Plan for the plan term as well as turn over non-exempt property of the estate. The increased payment will result in an additional distribution to filed and allowed non-priority general unsecured creditors."

Mr. Black objected to the Modified Plan. He argued that the Modified Plan did not comply with §§ 1329, 1322, and 1325 because it "does not propose a new plan payment or plan length. It only adds or adjusts a few sections of the plan. In other words, a debtor could not propose a modification in this way and have it confirmed."

6

He also argued that the proposed modification was untimely, because he had completed his plan payments. He was only required to complete a 36-month plan under § 1322(d)(2)(A) but agreed to a 59-month plan. He was forty-eight months into his plan term when he sold the Property and paid the Trustee the remaining balance due under the plan from the sale proceeds. Thus, he completed his plan, and the Trustee cannot modify a completed plan.

Finally, he argued that, under *McDonald v. Burgie (In re Burgie)*, 239 B.R. 406 (9th Cir. BAP 1999), the sale proceeds were not disposable income that he must commit to the plan, and he cannot be compelled to use the proceeds of the postpetition sale of prepetition real estate to pay creditors under a chapter 13 plan.

In response, the Trustee argued that the Modified Plan satisfied §§ 1329, 1322, and 1325 because it only amended three sections and incorporated the rest of the confirmed plan.

She also argued that the Modified Plan was timely because she filed it before the end of the 59-month plan term. Even though Mr. Black paid off the dollar amount due under the plan, the plan was still subject to modification during the full plan term.

Finally, the Trustee argued that the sale proceeds were property of the estate under § 1306 that should be turned over to the Trustee. She stated that Mr. Black originally valued the Property at $44,000, but later

acquired additional value in the property. When granting the Motion to Sell, the bankruptcy court held that the sale proceeds were property of the estate, so she contended that they must be turned over to the estate for distribution. She distinguished *Burgie*, arguing that in *Burgie* we considered whether the sale proceeds were disposable income, which was not the case here.

In his reply brief, Mr. Black argued that the Trustee's Modified Plan did not comply with the applicable statutes, because it failed to account for his future earnings; to prove that he will be able to make all plan payments; to estimate payments to general unsecured creditors; and to account for the increased trustee fee.

He also argued that the Modified Plan was untimely because it was proposed outside of the "temporal window" of the 36-month applicable commitment period.

Finally, Mr. Black argued that the confirmed plan provided that the property of the estate would vest in the debtor at confirmation. Additionally, the Property was acquired prepetition, so it was not after-acquired property contemplated by § 1306.

After a hearing, the bankruptcy court approved the Modified Plan. It first held that the Modified Plan was timely. It acknowledged that the confirmed plan had a "payment term of 59 months from and after May 9, 2014, thus in the context of Section 1329(c), the Court has already approved

a plan payment term that exceeds the 36-month applicable commitment period, which is a temporal minimum." However, it held that "a bankruptcy court may modify a plan at any time after plan confirmation so long as the modification occurs before the completion of payments under the plan." It then concluded that the payments under the confirmed plan had not yet been completed: "Payments under a plan have to continue for the duration provided for in the initial plan, absent modification, before being considered 'complete' for purposes of modification and discharge."

Second, the court held that the Modified Plan complied with §§ 1329, 1322, and 1325. It held that the Modified Plan "incorporates by reference and leaves unaffected the bulk of the terms of the debtor's confirmed plan. It modifies only Sections 1.08, 1.09, and 1.10 . . . . It contains the same 59-month planned payment requirement imposed by the confirmed plan. And it requires the same $250 monthly plan payment." Moreover, it noted that the Modified Plan properly provided for distribution of the sale proceeds, "[a]nd it states that the increased payment will result in an additional distribution to all filed and allowed non-priority, general, unsecured claims."

Finally, the court held that the sale proceeds must be turned over to the Trustee:

> Turnover of the proceeds from the sale of the Washington
> Avenue property to the Trustee is warranted. Those proceeds
> are not exempt property of the bankruptcy [e]state under 11

9

U.S.C. Section 541(a). The Court has considered the balance of the arguments made and the authority cited by the debtor, including without limitation *In re Burgie*, 239 B.R. 406, Ninth Circuit Bankruptcy Appellate Panel decision from 1999, and finds them unavailing and/or indistinguishable [sic] from the issues that are presented here.

The bankruptcy court entered an order ("Confirmation Order") confirming the Modified Plan. It held that "[t]urnover of the proceeds from the sale of property . . . to the Trustee is appropriate because the proceeds are not exempt property of the bankruptcy estate under 11 U.S.C. § 541(a)."

Mr. Black timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (L). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in confirming the Modified Plan.

## STANDARDS OF REVIEW

"The confirmation of a modified plan is reviewed for an abuse of discretion." *Profit v. Savage (In re Profit)*, 283 B.R. 567, 572 (9th Cir. BAP 2002) (citing *Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 433 (9th Cir. BAP 1997)); *see Dernham-Burk v. Mrdutt (In re Mrdutt)*, 600 B.R. 72, 76 (9th Cir. BAP 2019) ("Modification under § 1329 is discretionary and is reviewed for an abuse of discretion." (citing *Powers v. Savage (In re Powers)*,

10

202 B.R. 618, 623 (9th Cir. BAP 1996))).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

To the extent the bankruptcy court based its decision to modify a plan on statutory interpretation, "whether the bankruptcy court was correct in its interpretation of the applicable statutes is reviewed de novo." *In re Mrdutt*, 600 B.R. at 76 (citing *Mattson v. Howe (In re Mattson)*, 468 B.R. 361, 367 (9th Cir. BAP 2012)). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

## DISCUSSION

### A. The bankruptcy court did not err in holding that the Modified Plan was timely.

Mr. Black argues that the bankruptcy court erred in allowing the plan modification, because the time to seek modification expired when he completed his plan payments early. We disagree.

11

Section 1329(a) provides that, "[a]t any time after confirmation of the plan **but before the completion of payments** under such plan, the plan may be modified" to "increase or reduce the amount of payments on claims of a particular class provided for by the plan[.]" § 1329(a) (emphasis added). At issue is the meaning of "completion of payments." Mr. Black argues that he completed his plan payments early when he made the extra $4,000 lump-sum payment with funds that he realized through the sale of the Property. Conversely, the Trustee argues that the fifty-nine months in his plan term had not yet expired and Mr. Black had not sought to modify the plan term, so her Modified Plan was timely.

We have not squarely addressed this exact question, but our previous decisions are instructive. We have held that, as a general proposition, payments are not "complete" when the debtor pays them early, unless the debtor modifies the plan pursuant to § 1329 to shorten its term:

> **A debtor desiring to prepay a chapter 13 plan and obtain an early discharge without paying allowed unsecured claims in full must follow the § 1329 modification procedure prescribed by Rule 3015(g).** In exchange for a § 1328(a) discharge of more debts than can be discharged in chapter 7, the debtor's increases in income are exposed to the risk of being captured by way of § 1329 modifications proposed by the trustee or an unsecured creditor. **The debtor cannot short-circuit that exposure merely by prepayment, but rather must obtain a § 1329 plan modification after having given the**

12

**notice required by Rule 3015(g)**.[3]

*Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 544 (9th Cir. BAP 2007) (footnote omitted) (emphases added).

We have also rejected a chapter 13 plan with an indefinite duration, which would have allowed the debtor to "complete" his plan whenever he paid off all priority and secured claims. *In re Escarcega*, 573 B.R. 219 (9th Cir. BAP 2017). Construing *Fridley*, we stated that "payments under a plan have to continue for the duration provided for in the initial plan, absent modification, before being considered 'complete' for purposes of modification and discharge." *Id.* at 239 (citing *In re Fridley*, 380 B.R. at 543-44).

Therefore, Mr. Black's plan payments were not "complete" when he made the lump-sum payment, because he did not modify his plan to shorten its duration.

Mr. Black argues that he was only required to complete a 36-month plan and cannot be compelled to satisfy the full term of his 59-month plan. He is wrong.

Because Mr. Black's income is less than the applicable median, his "applicable commitment period" was thirty-six months. In other words, a three-year plan term would have satisfied § 1322(d)(2)(A). But he proposed

---

[3] Current Rule 3015(h) requires that the proponent of the plan modification give twenty-one days' notice to the debtors, trustee, and creditors.

a fifty-nine month term, probably because he could not afford a larger monthly payment and therefore needed more time to generate plan funding sufficient to meet other confirmation requirements.

Mr. Black's argument is flawed because the statute does not tie the plan modification time limit to the "applicable commitment period." Section 1329(a) cuts off the right to modify a plan upon "completion of payments under such [i.e., the original] plan." If Congress meant to terminate the modification right upon expiration of the applicable commitment period, it could and would have said exactly that.

Accordingly, Mr. Black had not yet "completed" his plan payments, and the Trustee's Modified Plan, filed within the 59-month plan term, was timely.

**B.     The bankruptcy court did not err in holding that the Modified Plan otherwise met the requirements of §§ 1329, 1322, and 1325.**

Mr. Black argues that the Modified Plan failed to satisfy the statutory requirements of §§ 1329, 1322, and 1325. We again disagree.

Section 1329(b)(1) provides that "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." § 1329(b)(1). These requirements are "mandatory plan provisions." *In re Profit*, 283 B.R. at 575.

Mr. Black argues that the Modified Plan failed to comply with these

statutes because it: (1) did not provide the specific date of turnover of the proceeds; (2) did not have a specific provision for a § 1325(a)(4) liquidation; (3) did not provide a new payment amount or new length; and (4) did not provide proof that Mr. Black will be able to make all plan payments under § 1325(a)(6).

Mr. Black's arguments boil down to the assertion that a party proposing a postconfirmation plan modification must submit a complete plan. He says that it is not sufficient for a proponent to state only the provisions that are to be modified and incorporate (either implicitly or explicitly) the unmodified provisions of the original plan.

We agree with the bankruptcy court that the Trustee's Modified Plan was proper in form. It only changed three sections of the confirmed plan and incorporated the rest of the confirmed plan by reference. Mr. Black provides no authority for his argument that the Trustee's incorporation of the balance of the confirmed plan was improper.[4]

Therefore, the bankruptcy court did not err in holding that the Modified Plan satisfied the relevant statutory requirements.[5]

---

[4] We do not mean to preclude bankruptcy courts from requiring a complete plan in a particular case or in all cases as a matter of local policy. Such a policy might be particularly appropriate for preconfirmation modifications.

[5] Mr. Black also argues that the Modified Plan was actually a motion for reconsideration. This argument is meritless. A proposed plan modification under § 1329 is not the same as a motion for reconsideration of the original confirmation order.

**C.**     **The bankruptcy court erred in holding that all of the sale proceeds of the Property must be committed to the plan.**

Mr. Black contends that the bankruptcy court erred in confirming the Modified Plan, which required him to turn over to the Trustee the sale proceeds in excess of the $45,000 specified in the original plan. He contends that the property of the estate revested in him upon plan confirmation, so any additional value of the Property belonged to him. We agree.

The parties' respective positions underscore the tension between § 1327 on the one hand and § 1306 and § 541(a)(6) on the other. Mr. Black relies on § 1327(b), which provides that "the confirmation of a plan vests all of the property of the estate in the debtor." § 1327(b). Subsection (c) provides that "the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan." § 1327(c).

The Trustee relies on two sections stating that property acquired postpetition and proceeds from the sale of estate property are property of the estate. Property of the estate includes "all property of the kind specified in such section [541] **that the debtor acquires after the commencement of the case** but before the case is closed, dismissed, or converted . . . ." § 1306(a)(1) (emphasis added). Similarly, the estate includes "**[p]roceeds**, product, offspring, rents, **or profits of or from property of the estate**, except such as are earnings from services performed by an individual

16

debtor after the commencement of the case." § 541(a)(6) (emphases added).

Our decision in *Burgie* applies. In that case, the bankruptcy court confirmed the debtors' chapter 13 plan. A few days later, they sought to sell their homestead property; the chapter 13 trustee did not object. The debtors sold their property, paid off their first and second mortgages, and received net proceeds of $63,000. The chapter 13 trustee moved to modify the plan to require the debtors to surrender some of the sale proceeds to increase payments to general unsecured creditors. The bankruptcy court denied the motion, and the trustee appealed. Subsequently, the debtors purchased a new homestead using $43,000 and stated that they intended to use the remaining $20,000 to support themselves and complete their plan payments. 239 B.R. at 408.

On appeal, we considered whether the debtors could retain the $20,000 or whether they had to turn it over to the trustee to increase the dividend to general unsecured creditors. *Id.*

We first rejected the trustee's argument that the $20,000 constituted disposable income that the debtors needed to commit to the plan. We stated that "[t]he proceeds of the sale of a debtor's real estate in a chapter 13 case never become disposable income for the purposes of chapter 13. . . . While a debtor may voluntarily use such proceeds to make payments to creditors under a chapter 13 plan, a debtor cannot be compelled to use the proceeds for this purpose." *Id.* at 409.

We explained the interplay between the "chapter 13 deal" and the sale of a prepetition asset:

> An examination of the basic structure of chapter 13 makes it clear that the **debtors cannot be compelled to use the proceeds from the sale of prepetition real estate to pay creditors under a confirmed chapter 13 plan**.
>
> In place of liquidating non-exempt assets to pay creditors under chapter 7 of the Bankruptcy Code, Congress gave individuals with regular income the option of adjusting their debts pursuant to a plan under chapter 13. The chapter 13 deal permits a debtor to retain all prepetition property, including earnings, assets, money in the bank and real estate. In exchange for keeping all of these assets, the debtor must commit all postpetition disposable income to the payment of creditors under a chapter 13 plan for a period of three to five years. If the debtor makes all of the payments required under the plan, all of the debtor's dischargeable debts are discharged, and the debtor keeps all of the prepetition assets.
>
> **Postpetition disposable income does not include prepetition property or its proceeds. This is the chapter 13 debtor's bargain. Creditors of a chapter 13 debtor have no claim to any of these assets.**

*Id.* at 410 (footnote omitted) (emphases added). We further held that, "[a]fter confirmation of a chapter 13 plan, a debtor may volunteer to pay creditors from capital assets, and thereby relieve future income from the obligations under the plan. However, a chapter 13 debtor cannot be compelled to do so." *Id.* at 411 (citations omitted).

18

Finally, we noted that this rule applied regardless whether the property at issue was exempt: "Whether prepetition property, sold by the debtor after plan confirmation, is exempt is not directly relevant to the foregoing analysis. Under a chapter 13 plan, the debtor is entitled to keep all of the debtor's prepetition property, whether or not it qualifies under the applicable exemption laws." *Id.*

*Burgie* is on point.[6] The Panel considered whether prepetition property liquidated postconfirmation must be committed to the chapter 13 plan. The Panel concluded that, so long as the debtors commit all of their postpetition disposable income to the plan and meet the other plan confirmation requirements, they get to retain their capital assets and creditors cannot reach the proceeds of such. Accordingly, so long as Mr. Black satisfies the terms of his confirmed plan, he does not have to commit the excess proceeds from the sale of the Property to pay his general

---

[6] Mr. Black argues that *Burgie* is binding on all bankruptcy courts in the circuit and that the bankruptcy court erred by failing to follow it. The Ninth Circuit has never held that our decisions are binding (under stare decisis principles) on any court. *See, e.g., Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990). We view ourselves as bound by our prior published decisions. *Salomon N. Am. v. Knupfer (In re Wind N' Wave)*, 328 B.R. 176, 181 (9th Cir. BAP 2005) ("[W]e regard ourselves as bound by our prior decisions, and 'will not overrule our prior rulings unless a Ninth Circuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings.'" (citations omitted)); 9th Cir. BAP R. 8024-1(c)(1) (also acknowledging ability of Panel to modify or reverse itself sitting en banc). We will follow *Burgie*, and we need not decide whether stare decisis also obliged the bankruptcy court to do so.

unsecured creditors.

The Trustee attempts to distinguish *Burgie* by arguing that the Panel focused on the characterization of the proceeds as disposable income.[7] While the Panel held that the sale proceeds were not disposable income, the Panel stated its holding more broadly: "debtors cannot be compelled to use the proceeds from the sale of prepetition real estate to pay creditors under a confirmed chapter 13 plan." *Id.* at 410.

The Trustee urges us to focus on the characterization of the sale proceeds as property of the estate under § 541(a)(6). It is true that the Property was property of the estate when Mr. Black commenced his case. But when the bankruptcy court confirmed the plan, the Property was revested in Mr. Black.[8] The confirmed plan provided that "[a]ny property

---

[7] If anything, the 2005 amendments to the Bankruptcy Code strengthen *Burgie*'s view that proceeds of post-petition asset sales are not included in disposable income. The term "disposable income" now means "current monthly income" less certain expenses. § 1325(b)(2). "Current monthly income" in turn means the debtor's average monthly income during a six-month **prepetition** period. § 101(10A).

[8] In its Sale Order, the bankruptcy court stated that "THE COURT FINDS that the property is property of the estate . . . ." The Trustee states that Mr. Black did not appeal from the Sale Order and implies that it is too late for him to take issue with the court's ruling that the Property was property of the estate. But Mr. Black was the prevailing party on the Motion to Sell. He cannot be compelled to appeal from the Sale Order, even if it contained, in part, an unfavorable finding. *See Camreta v. Greene*, 563 U.S. 692, 703-04 (2011) ("As a matter of practice and prudence, we have generally declined to consider cases at the request of a prevailing party, even when the Constitution allowed us to do so. Our resources are not well spent superintending each word a lower court utters en route to a final judgment in the petitioning party's favor." (citations omitted)); *Deposit*

(continued...)

20

of the estate scheduled under § 521 shall vest in Debtor upon confirmation of this Plan." Section 1322(b)(9) expressly permits such revesting: the plan may "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." Revesting means that Mr. Black owned the property outright, free of his creditors' claims. *See Cal. Franchise Tax Bd. v. Jones (In re Jones)*, 420 B.R. 506, 515 (9th Cir. BAP 2009) (holding that the estate terminates upon plan confirmation and concluding "that 'vests' [under § 1327(b)] means absolute ownership, not mere possession"); *In re Niles*, 342 B.R. 72, 75 (Bankr. D. Ariz. 2006) ("[T]he intervening plan confirmation fundamentally changes the 'property of the estate' landscape. Here, the plan was confirmed and the property

---

[8](...continued)
*Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 333 (1980) ("Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom. A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." (citations omitted)).

Moreover, the court's finding was unnecessary. Section 5.04(a) of the confirmed plan required Mr. Black to seek court authorization to sell real property valued at over $5,000. Because this plan provision is not limited to property of the estate, the bankruptcy court did not need to decide whether the property belonged to the estate. An unnecessary finding has no preclusive effect on subsequent litigation. *See United States v. Good Samaritan Church*, 29 F.3d 487, 489 (9th Cir. 1994) ("Determinations which are immaterial to the judgment below have no preclusive effect on subsequent litigation, especially if they cannot be appealed. The judgment was entirely favorable to appellants so we have no jurisdiction over the appeal. To the extent that the district court order was not favorable to appellants, it does not bind them in subsequent litigation." (citation omitted)).

revested in Debtor at that time.").

The Trustee argues that, even though Mr. Black owned the Property prepetition, the appreciation of its value (from $45,000 to $107,000) is property that he acquired postpetition under § 1306. She cites a First Circuit case, *Barbosa v. Soloman*, 235 F.3d 31 (1st Cir. 2000), for the proposition that the appreciation in value of prepetition property is property that the estate acquired postconfirmation, despite the vesting provision in the chapter 13 plan.

We acknowledge that there is a split in authority on this point. *Compare Barbosa*, 235 F.3d at 37, *and In re Suratt*, Case No. 95-6183-HO, 1996 WL 914095, at *3 (D. Or. Jan. 10, 1996) (allowing modification of chapter 13 plan to account for postconfirmation appreciation in property), *with In re Smith*, 514 B.R. 464, 472 (Bankr. N.D. Tex. 2014) ("Even if the post-confirmation appreciation in value was property of the estate, the appreciation is not disposable income [that could be made available to creditors in the analogous chapter 12 context.]"), *and In re Niles*, 342 B.R. at 75 (when considering whether property is property of the estate upon conversion from chapter 13 to chapter 7, "the value of the estate's interest in the [postpetition appreciation] proceeds from Debtor's sale of the property does not include any of the nonexempt sales proceeds").

In our view, the revesting provision of the confirmed plan means that the debtor owns the property outright and that the debtor is entitled to any

postpetition appreciation. When the bankruptcy court confirmed Mr. Black's plan, the Property revested in Mr. Black. *See In re Jones*, 420 B.R. at 515. As such, it was no longer property of the estate, so the appreciation did not accrue from estate property. *Cf. Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 (9th Cir. 1991) ("**No doubt Debtor's argument that appreciation enured to him would have merit if his entire interest in the residence had been set aside or abandoned to him**; it was not."(emphasis added)).[9]

Moreover, we have already considered and rejected the framework underpinning *Barbosa*. The First Circuit reasoned that, despite the language in the plan revesting property with the debtor upon plan confirmation, "[t]he estate does not cease to exist however, and it continues to be funded by the Debtors' regular income and post-petition assets as specified in section 1306(a)." 235 F.3d at 37. Accordingly, postconfirmation appreciation of real property could be used to increase the payout to unsecured creditors.

However, we squarely rejected *Barbosa*'s approach in *Jones*. We

---

[9] If the plan did not vest the Property in Mr. Black, the result would likely be different. *See Klein v. Chappell (In re Chappell)*, 373 B.R. 73, 83 (9th Cir. BAP 2007), *aff'd sub nom. Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206 (9th Cir. 2010) (In a chapter 7 case, where property does not revest in the debtor, "[u]nder well-settled Ninth Circuit law, any postpetition appreciation in value in the residence in excess of the maximum amount permitted by the exemption statute invoked inures to the benefit of the estate."); § 541(a)(6) (a bankruptcy estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate . . . .").

acknowledged *Barbosa*'s "modified estate preservation approach," 420 B.R. at 513, but opted instead for the "estate termination approach," which provides that "all property of the estate vests in the debtor at confirmation[,]" *id.* at 514. On appeal from our decision, the Ninth Circuit affirmed, holding that "under the plain language of § 1327(b), the property of the estate revests in the debtor upon plan confirmation, unless the debtor elects otherwise in the plan. Because [the debtor] did not elect otherwise, she once again became the owner of her property at confirmation, except as to those sums specifically dedicated to fulfillment of the plan." *Cal. Franchise Tax Bd. v. Kendall (In re Jones)*, 657 F.3d 921, 928 (9th Cir. 2011) (but declining to adopt a particular approach to determine when and to what extent property revests with the debtor).

Finally, the Trustee's argument and the *Barbosa* decision are hard to square with the wording of § 1306(a)(1). In normal speech, one would not say that, when a person's assets increase in value, that person "acquires" an additional interest in the asset.

We must follow the Ninth Circuit's decisions and our own published decisions, rather than the First Circuit's decision in *Barbosa*.[10] At most, the

_____

[10] *Barbosa* also differs from the present case in that the bankruptcy court and First Circuit were both concerned that the debtors had under-reported the value of their homestead in order to strip off a second mortgage. The bankruptcy court characterized the debtors' scheme as "unsavory" and a "manipulation of the [Bankruptcy] Code." *Barbosa*, 235 F.3d at 34-35 (quoting *In re Barbosa*, 236 B.R. 540, 551-52 (Bankr. D. Mass.

(continued...)

$45,000 of sale proceeds that Mr. Black promised to his creditors remained property of his estate.

## CONCLUSION

The bankruptcy court erred in requiring Mr. Black to dedicate the excess sale proceeds of the Property to his unsecured creditors. We REVERSE the Confirmation Order.

---

[10](...continued)
1999)). The First Circuit noted that the debtors realized "appreciation in value of almost 215% of the stipulated value of the property," and stated that the debtors' tactics were "antithetical to the bankruptcy system." *Id.* at 41. Here, the Property was unencumbered, and there is no evidence that Mr. Black either artificially undervalued the Property or engaged in manipulative tactics.